*209 OPINION of the Court, by
Judge Trimble.
— This case comes before the court upon a bill of exception, tendered by the plaintiff in error, who was the defendant in the court below, to the opinions of that court in refusing to direct the jury as in case of a nonsuit, because the evidence adduced by the plaintiff, as set forth in the bill of exception, was insufficient in law to support the case laid in the declaration ; and in rejecting the evidence which was offered by the defendant. The first question, therefore, will be, was the evidence sufficient to maintain the" plaintiff’s action as laid ?
The declaration is in indebitatus assumpsit for money had and received by the defendant to the plaintiff’s use. The truth of the plaintiff’s evidence was not, in the court below, nor is it in this, a subject of enquiry for the court. When the defendant rests his case upon a motion for a nonsuit, on account of a suppo’sed defect in the plaintiff’s evidence, the court must not only consider the evidence given as true, but are bound to infer from it every fact which the jury might fairly and ra-tionallyhave inferred; and then the question is as to its legal effect and operatioh.
Evidence of fuch cuffcom was properly re. }ected.
That the evidence was sufficient to prove the money’ “ was had and received by the defendant,” has not been, and cannot be fairly controverted ; but the objection urged is, that it was not received to the plaintiff ’s use, but to the use of the Insurance Company.
This question must be tested by the facts proven, and the law arising upon those facts. It appears that the Kentucky Insurance Company had, in pursuance of the act of assembly granting their charter, established and opened an office of discount and deposit in the town of Lexington ; that John Bradford, the plaintiff, was duly appointed cashier, and gave bond to the president and directors of the compan}-, conditioned that he would faithfully fulfil the duties of the office of cashier ; and that he would account for all monies, bonds, bills, notes, or other property, in his care, belonging to the company. It further appears, that the money of the company was kept in boxes separate and distinct from the money of any individual; that all monies deposited by any individual was delivered to the cashier; that the person so depositing was credited with the amount deposited in the books of the company ; and that Bradford, the cashier, had no authority to pay out any of the monies, except in discharge of checks drawn on the cashier : that the cashier was made debtor in the books of the company for all monies received into the bank, and credited with the amount of the checks received and filed by him; and that if he pays out upon a check more than the amount specified in it, the loss is his, and not the company’s. It further appears, that the defendant, Gallatin, in July, 1803, while Bradford was cashier, obtained a discount on his note, for 300 dollars, at the office of the insurance company: that, on the 27th of July, 1803, he drew a check, in the name of Fishal and Gallatin, upon the cashier for 296 dollars 85 cents, being the amount he was entitled to receive on said note ⅛ that Bradford, the cashier, paid him, as he supposed, the amount of the check, which he took in, and that Gallatin withdrew from the office with the money without any mistake being discovered. A few hours after, but on the same day, it occurred to M’Bean, the clerk of the office, that the cashier had paid to Gallatin 39£ dollars 85 cents, being one hundred dollars more than tie was entitled to receive ; and the said M’Bean prov^ *211 cd circumstantially how the mistake had been committed.
From the facts proven it is clear, that Bradford had the possession of all the money in the office of the company ; that he was debtor to the company for the amount thereof; and that if he paid out upon a check, through mistake or otherwise, more than was due, the loss was his own, not the company’s. Should Bradford, who sustained the loss, or the company, who sustained none, have the remedy for repairing the loss ? As Bradford was bound to the company, who had a right to look to him, and were not bound to look to Gallatin, for the money thus paid through mistake, it seems tQ. follow that the money was received to Bradford’s use.
Suppose Bradford had lent Gallatin one hundred dollars of the company’s money without authority ; could he not recover back the money lent ? he surely could, notwithstanding the money, before lent, belonged to the company ; for by the very act of lending without authority, he would make the money lent his own, and would himself become accountable to the company for the amount. So here, by the very act of paying away, or advancing the money, through mistake, and without authority, the money advanced to Gallatin improperly became Bradford’s own ; and he, not the company, was bound to look to Gallatin for the recovery of it back.. Bradford thereby became the debtor of, or liable to the company, and Gallatin became his debtor in the same sum. It ought to be recollected, that although the case grew out of an express contract between the company and Gallatin, yet the money overpaid was no part of that contract, but entirely out of it. Bradford’s right to recover is not founded on that express contract, but upon an assumpsit raised and implied in law, that as through mistake Gallatin had received one hundred dollars, whereby Bradford lost it, Gallatin would repay it to him.
On the second point there is less difficulty. The evidence offered by Gallatin, and rejected by the court, was for the purpose of proving a custom among banks generally, and in the insurance office particularly, that no mistakes should be rectified in the receipt or payment of money, unless the mistake is discovered before the person paying or receiving departs. If such a custom *212 does exist,»t is contrary to law ; and ought not to meet with the sanction of a court of justice. The law declares that money received through mistake shall be refunded ; and this rule of law is founded in morality, which makes part of the law of the land. Would it not be as immoral and unjust, if a mistake were made in the receipt or payment of money at a bank, to hold the money obtained by such mistake, although not discovered until after the person paying or receiving had got out of the door, as if the mistake had before been discovered ? There surely can be no difference in morality ; and the law makes none. Such a custom, in banking institutions, may be an evidence of avarice, but not of the practice ofjustice, among those concerned.
We have no hesitation in saying, that if a mistake were made in favor of the insurance company, and they were to allege such a custom in bar of the correction of the mistake, the law would not sanction an attempt so palpably unjust. Malus usus abolendns est; and therefore the court did right in rejecting proof of such, custom.-Judgment affirmed.