KAY & CASEY
vs
CURD, &c.

---

CHANCERY.

*Case 23.*

Kay and Casey *vs* Curd, &c.

APPEAL FROM THE TRIMBLE CIRCUIT.

*Frauds and Perjuries. Rents. Interest.*

Oct. 4.

JUDGE BRECK delivered the opinion of the Court.

The case stated.

MERRYMAN B. CURD purchased, by executory contract, from Robert Wickliffe, a tract of land on the Ohio river, in the county of Trimble. Curd obtained possession of the land, and having laid it off into lots, sold his brother-in-law, Kay, a lot containing sixty-four acres. The sale was a verbal one. Kay obtained possession, improved it and resided upon it for several years, and finally sold it to Casey. In 1835, Kay, upon a settlement of various matters and transactions between him and Curd, including the purchase money for the sixty-four acres of land, gave Curd his note for two hundred dollars, and Curd at the same time, gave Kay an order upon Edward Wilson for a conveyance of the land, he having been constituted by Wickliffe, his attorney in fact, to make conveyances of the land he had sold Curd. The order was as follows:

"Sir—Be so good as to make James Kay a deed to the sixty-four acres of land that is laid down in your plat, and I will see you shortly to make the other deeds.

"And oblige yours, &c.     [*Merryman B. Curd.*
"*Maj. Ned. Wilson*,                    15th Feb. 1835."

Before the deed was made, Curd countermanded the order, and procured a conveyance to be made by Wickliffe to W. H. Field, in trust for the two sons of Curd. Kay then exhibited his bill, in which Casey subsequently united, alledging the foregoing facts, making Curd and his sons, and Field and Wickliffe parties. He also alledged that the consideration for the land purchased of Curd, was about seven hundred dollars; that he had ten-

dered to him the $200 which upon final settlement he fell in debt to him, but which he refused to receive and cause the conveyance to be made to him for the sixty-four acres of land.

Curd in his answer, admits the sale of the land by parol, and that he believes the consideration to have been about $451. He denies that it had been paid and that the note for $200 was given on account of the purchase money for the land. He relies upon the statute of frauds and perjuries in bar of the conveyance sought by Kay.

The young Curds claim the land, deny the right of the complainant, alledge that Field had refused to accept the trust under the deed from Wickliffe, make their answer a cross bill, and pray that another trustee may be appointed, and that the land may be decreed to them, and that Kay and Casey may account for the rents and profits thereof.

The Court below was of opinion that the purchase by Kay from Curd was by parol, and that the order upon Wilson was insufficient to take the case out of the statute of frauds and perjuries.

An account was directed to be taken of rents and profits and improvements, and of the amount of purchase money and interest, which had been paid, and· finally there was decreed to Casey $417 10, as the amount which the purchase money and interest and ·improvements exceeded the rents and profits, and so much of the land was decreed to be sold as might be sufficient for the payment thereof.

Casey has appealed to this Court.

The first question presented for consideration is, whether the order from Curd to Wilson is sufficient to take the case out of the statute of frauds and perjuries.

In giving construction to that statute, ·it has repeatedly been said and decided by this Court, that the terms of a contract for the sale of land must.be in writing.

In *Ellis* vs *Deadman's heirs*, (4 *Bibb*, 466,) the writing was a receipt for a portion of the purchase money as follows: "4 January, 1808. Received of Jesse Ellis $——, in part pay for a lot he bought of me in the town of Versailles, it being the cash part of the purchase of said lot. *Nathan Deadman.*"

*Decree of the Circuit Court.*

· Questions presented.

The *terms* of a contract for the sale of land, to take it out of the influence of the statute of frauds and perjuries, must be in writing.

KAY & CASEY
*vs*
CURD, &c.

The writing was held not to be such a memorandum in writing, of the contract, as would take it out of the statute. The Court say, if the receipt had specified the terms of the agreement, there would have been no doubt of the propriety of decreeing a specific execution; for although the receipt was apparently intended only to be evidence of the payment which had been made, yet it would, in that case, have been in fact such a memorandum of the agreement as would have taken the case out of the provisions of the statute.

The principles recognized in this and numerous other cases is, that parol testimony cannot be introduced to establish the terms. That to prevent the evils arising from the introduction of such testimony, was the great object of the statute.

The Court further say in that case, "that the language of our statute in regard to contracts for the sale of land, is in substance the same as the British statute, and clearly not susceptible of a different construction;" and that it is well settled by the English adjudications, that the terms of the agreement must be in writing, to take the case out of the statute.

In *Fowler* vs *Lewis*, (3 *Marshall*, 445,) the Court refused to enforce the contract, which was evidenced by a letter, upon the ground that it did not contain the whole contract. That it was not full and complete, and could not be ascertained and enforced, without the aid of extrinsic verbal testimony.

*Fugate* vs *Hansford*, (3 *Litt.*) cited where an order to trustees of a town describing a lot by its number, and acknowledging the payment of the whole consideration, was held to be sufficient to take the case out of the statute.

But in *Fugate* vs *Hansford*, (3 *Littell*, 262,) the writing, as in this case, was an order, and the Court decreed a specific execution. The order was as follows: "The trustees of the town of Carlisle, in Nicholas county, will please convey lot No. 32, to George L. Howard, who has this day purchased said lot from me, and for which I have received value in full. Nov. 2, 1816.

*James Fugate, Jr.*"

Here the consideration, or price, is not stated in the writing; but the Court say, as the contract was executed on the part of the purchaser, by the payment of the price, it was not necessary to state it. That the writing was sufficiently descriptive of the property sold, and admitted

KAY & CASEY
vs
CURD, &c.

the payment of the consideration, leaving nothing to be ascertained by parol testimony. It contained enough, therefore, to entitle the party to a specific execution.

But without adverting to other cases, in which the construction of the statute in regard to contracts for the sale of land, has been involved, it will be sufficient to say, that we consider the rule as settled, that the terms of the contract must be in writing, or in other words, that the writing must so far embrace the contract, that it may be specifically enforced, without the aid of parol testimony.

*It must be regarded now as the settled rule of decision, that sale of lands, must be so far evidenced by writing, as to enable the Chancellor specifically to execute it without the aid of parol testimony.*

In view of this rule, we cannot regard the writing in this case, whether considered as an executory or as an executed instrument, sufficient to take the case out of the provision of the statute. It is entirely silent as to the consideration, upon which it had been drawn, and hardly authorizes an inference that there had been even a sale. It can derive little or no support, we think, by the effort of counsel, to assimilate it to the assignment of a title bond, or bond containing a contract for the conveyance of land, and when the assignment does not contain the terms upon which it was made. In that case, the assignee becomes the absolute proprietor of the bond, and acquires all the rights under it, legal and equitable, of the assignor, and without his aid or co-operation, can enforce it against the obligor. But in this case the complainant must make out his case against the drawer of the order. Nor would even the construction of the statute contended for by counsel, and which seems to be favored by the *dictum* in *Ratliffs* vs *Trout,* (6 *J. J. Marshall,* 605,) that the *promise* of the vendor is alone required to be in writing, render the writing in this case available. It contains neither an express nor an implied promise on the part of Curd to convey.

But it is urged that the statute in this case has only been relied upon by M. B. Curd, who had at the time no interest in the land, the title having been conveyed at his instance, to Field, in trust for his sons. The sons, however, controvert the right of the complainants, and put them upon the proof of their whole case. They must, therefore, make out such a case as will entitle them to a specific performance, and this they have failed to do. It

KAY & CASEY
vs
CURD, &c.

A purchaser by parol let into possession, is not accountable for rents until the vendor has repudiated the contract of sale, nor should he receive interest on the consideration paid, but from the same period—

—Nor should such a purchaser be charged for more timber than he had actually sold off the land.

is not necessary to rely upon the statute, if the contract is denied, see (1 *Bibb*, 209,) and *Fowler* vs *Lewis, supra.*

But lastly, it is insisted that the decree is erroneous in not decreeing a larger amount to the appellant, and in not decreeing the note for $200 from Kay to Curd to be cancelled and given up. As Kay obtained possession of the land under a purchase by parol from Curd, according to the rule in *Fox's heirs* vs *Longly,* (1 *Marshall,* 388,) and which we are inclined to regard as just and equitable, he ought not to be charged with rent until his right was denied by Curd or an assertion of title by him. There is no satisfactory evidence of any repudiation by Curd, of the sale to Kay, till the conveyance by Wickliffe to Field, which was about the time Kay exhibited his bill. As the trust, however, was not accepted by Field, and no consideration paid by the sons, we are of opinion the complainants ought not to have been charged with rent till the right of Kay was denied, and title asserted by Curd and his sons in their answers, which was not till the fall of 1837. Prior to that time, Kay should not have been charged with rents, nor should he have been allowed interest upon the purchase money which he had paid.

The rents charged, including the rent of 1837, exceed the interest allowed, including the interest for that year, and to that extent the decree in that behalf, is erroneous. We are further of opinion, that the amount allowed for clearing and fencing the land, is too small. The Commissioner's report allows only $80 for clearing and fencing 40 acres of land, over and above the timber upon it. If Kay and Casey are to be charged with all the timber upon the land which could have been cut into cord wood and sold, the testimony may possibly sustain the report. The testimony is, however, so indefinite and conflicting in regard to the cost of clearing and fencing the land, over and above the value of the timber, that there is great difficulty in coming to any satisfactory conclusion upon the subject. But we are by no means prepared to sanction the rule, that Kay should be charged with all the timber upon the land, whether actually sold and disposed of by him or not. It seems to us, that it would be more equitable to charge him only with the ac-.

tual amount realized by him. He was not at the time a trespasser upon the land, but claimed it by contract as his own, and until his right was questioned by Curd, he ought, upon no principle, to be held responsible for more than was actually received by him for the wood and timber. It does not appear that any of the land was cleared upon contract to receive the wood in payment in whole or in part. There is some testimony that he occasionally disposed of the wood, but it is wholly indefinite as to the quantity. It seems to us, that if he were charged for the wood, one half of the expense of clearing and fencing it, would be as much or more in view of the testimony, as he realized from the sale of it. As to the cost of clearing and fencing, the witnesses vary very much in their estimates. We are of opinion that $12 per acre may be assumed as an average. In this view of the case, the complainant will be entitled to $4 per acre more, clearing and fencing 40 acres, than was allowed by the Commissioner. He should be allowed interest upon the $271, the purchase money paid from the 1st January, 1838, and from that time should be charged with rents.

In regard to the last objection to the decree, that it did not provide for a cancelment and surrender of the note of Kay for $200, it need only be remarked, that in that matter Kay only was interested, and he does not complain. The note was in effect, however, cancelled by the decree.

The decree is reversed, and the cause remanded for further decree, consistent with this opinion.

*Morehead & Reed and Armstrong* for appellants: *Loughborough* for appellees.