CHIEF JUSTICE WILLIAMS
delivered the opinion of the court:
These parties entered into the following written agreement, viz: “ This is to certify that we, James W. Over-street and Franklin W. Rice, have this day swapped farms, and the said Overstreet agrees and binds himself to pay to the said Rice one thousand dollars by the first day of March next, or the time of exchanging places, and the balance, seven hundred dollars, twelve months from time of exchanging places, this 31si December, 1866.
“ J. W. Overstreet,
“F. W. Rice.
“ Witness :■ — Cram. Haskins.”
February 21, 1S67, the parties did exchange, Overstreet moving from his farm, in Taylor county, to the one for which he had traded it from Rice, in Adair county, and Rice removing to the Overstreet farm, in Taylor county.
The first installment of one thousand dollars not being paid, Rice brought his action ordinary to recover it, March 19, 1867, to which Overstreet put in his answer and cross-petition, averring—
1. That no contract in writing as to said land trade had ever been entered into, but that it remained in parol, and was not, therefore, enforceable. .
2. That Rice had no good and sufficient title to the Adair county farm, and prays an exhibition of his title.
3. That Rice had practiced a fraud on him in a misrepresentation as to where the lands were situated — - representing that only some thirty of the three hundred and thirty-three acres lay southeast of the creek, *4 among the hills, and the remainder on the opposite side being level bottom land, and much more valuable; whereas, about one hundred and fifteen acres lay among the hills southeast of the creek; and he prayed for a rescission, &c.
The cause was, on defendant’s motion, transferred to the equity docliet, after which, on March 10, 1868, Rice replied, asserting the contract in writing, the actual exchange of farms, averring that the last payment became due March 1, 1868; agreeing that he represented the whole tract to contain three hundred and thirty-three acres, but averring that it really contained much more; denied any misrepresentations, and exhibited his claim of title as coming from Andrew Barnett, deceased, who, and his vendees, had held over thirty years uninterrupted adverse possession; offering to convey by general warranty deed, upon payment of the purchase price; resisted any rescission or cancelment of the contract, and prayed as in his original petition — that is, “for judgment for one thousand dollars, with interest from 1st day of March, 1867, and for all other and proper relief.”
The court, on final hearing, adjudged that Overstreet should pay the one thousand seven hundred dollars, convey the Taylor county farm to Rice, and receive a conveyance from Rice to the Adair county farm; from which Overstreet prosecutes this appeal.
This instrument of writing does at least evidence a contract of mutual exchange of lands in presentí, and, though it was not enforceable within itself, unaided by extraneous circumstances, for want of certainty in specifying what lands were exchanged, yet when the parties, by their subsequent acts, have rendered this uncertainty sure by taking possession and consummating the mutual exchange, it is too late for either party to say there is *5 no memorandum in writing, signed by the party to be charged; and especially when the vendor shows he is both able and willing to convey, shall the vendee in possession not be heard to set up such a defense?
If voidable for uncertainty when the writing was first executed — which, however, is not admitted — this impediment has been removed by the subsequent acts of both parties. It is clearly taught by Story (1 Equity Jurisprudence, section 759, and through chapter 18), that courts of equity will enforce a specific performance of a contract within the statute where it has been partly executed; for otherwise one party would be able to practice a fraud upon the other, which was not the intention of the statute. It is true, that great caution is to be used in the determination of what is a part execution. This case, however, comes within the most rigid rules.
In Ellis vs. Deadman’s heirs (4 Bibb, 466), the writing sued upon was as follows: “4 January, 1808. Received of Jessee Ellis $-, in part pay for a lot he bought of me in the town of Versailles, it being the cash part of the purchase of said lot. Nathan Deadman.” This court said, had the receipt specified the terms of the agreement, there would have been no doubt of the propriety of decreeing the specific execution; for though the receipt apparently intended only to evidence the payment made, yet it would, in that case, have been such a memorandum of the agreement as would have taken the case out of the provision of the statute. The amount paid was in blank, nor did it at all show the agreed consideration. The terms of the agreement between Overstreet and Rice are specifically set out; that is, the one farm for the other, and seventeen hundred dollars, to be paid in two unequal installments; the term “farms” is certainly as specific as a “lot” in a town.
*6 In the case of Kay & Casey vs. Curd (6 B. Mon., 100), the order attempted to be enforced as a memorandum neither specifies the land nor the terms, hence was clearly within'" the provision of the statute of frauds.
In Fowler vs. Lewis (3 Mar., 445), the letter signed by the agent of the vendor evidenced that another and previous contract had been made; but what the terms were remained to be ascertained by extraneous evidence, hence not enforceable.
But in Fugate vs. Hansford (3 Litt., 262), upon the order of Fugate to the Trustees of the Town of Car-lisle, in Nicholas county, to convey lot No. 32 to George L. Howard, who has this day purchased the said lot from me, and for which I have received value in full, November 2, 1816, this court held, whilst it did not import an obligation to convey, it still clearly witnessed a contract for the sale of land; and as the consideration had been received, and so far executed, no evidence need be introduced as to it, and, therefore, did not come within the statute in this case; though the town and county were named, the State was not.
Neither of these cases, therefore, militate against the enforcement of this contract, whilst the reasoning and principles of some justify it.
Andrew Barnett^ deceased, by his last will, devised to his negroes a tract of six hundred and ninety acres on Casey’s creek, Adair county; but, by a subsequent provision, he directed all the residue of his real and personal estate to be converted into money not previously devised; and as this was a tract of about three hundred and fifty acres originally, or the half of seven hundred acres patented to Alexander, it is pretty evident that it is not the tract of six hundred and fifty acres devised to the negroes, especially as it appears in evidence that *7 he owned other lands on said creek, fortified as this evidence is by the long-continued, uninterrupted adverse possession, and this without any proof of claim asserted by the negroes.
Nor does the evidence establish any fraudulent representation by Rice.; but, on the contrary, manifests that Overstreet, by himself and agent or friend, had examined Rice’s farm several times, and then sought the exchange, and that there are really some twenty-odd acres more than it was said to contain.
The original petition at law only went for a judgment on the first payment of one thousand dollars, as the other was not then due; but the answer and cross-petition sought an adjudication in equity of the whole matter, and a rescission of the contract; and the reply averred the non-payment of the last installment, that it was due, and prayed for general relief.
It is evident that both parties were seeking an adjudication of all the matters in controversy; and, therefore, notwithstanding the pleadings are somewhat informal, yet, as all the matters have been heard, and conveyances properly decreed, we see no substantial error in adjudging to Rice the entire sum due him.
Wherefore, the judgment is affirmed, without damages, no supersedeas appearing in the case.