Judge Ewing
delivered the Opinion of the Court.
An action of ejectment was brought by Ford’s heirs, for a tract of land in the possession of the defendants— both parties claiming under the same patent.
A patent issued to Dupey for one thousand acres of land, in 1786. In 1796, Dupey sold to Richmond Harris, a certain boundary within said patent, and bound himself, in writing, to convey the same. On the 2d of December, 1797, he sold to Joel Ford the three hundred acres now claimed by his heirs, the lessors of the plaintiff, and, on the 27th January, 1801, conveyed the title. This deed covers the most of the land previously sold to Harris.
Haris, immediately thereafter, filed his bill against Dupey and Ford, alleging the payment of the considera, tion, and praying that the title might be decreed to him, according to his purchase, and obtained an order for publication against Ford, who was a non-resident; which was inserted only eight weeks, and in other respects was irregular. In 1806, the cause was heard, and the Court decreed that Harris had the better right to the land, and, ymder the decree, it was laid off by metes and bounds; *437 and, in 1811, a final decree was rendered that Dupey and Ford should convey, and Letcher was appointed a commissioner to make the conveyance. In 1832, Letch-er made the conveyance, which was approved of by the Court, and ordered'to be recorded.
A patentee sold a tract of land to a purchaser, by executory contract; and,soon after, sold and conveyed most of the same tract to another purchaser. The first purchaser entered upon the land he had bought, and continued in possession until this ejectment was brought— more than twenty years after-wards— by the heirs of the 2nd purchaser, upon his legal title: held that, the moment the ven dor had made the 2nd sale, the first purchaser— tho’ he had entered and held under an executory contract only — - ‘could, treat his vendor asastranger, and was no longer bound to ¿title” ¿'might gainsay and con- and^ightof'entry. The vendor, ance'to tfoTInd purchaser, had stript himself of all title, and had forfeited all claim to aliegiance or fidelity from his qua-first vendee — to then” afford° no protection, and theneeftnh, float liberty to controany title'or'rlght of entry in his vendor, or those claiming under him, by relying upon the bar by the statute, or any other legal defence. And —
*437 It was agreed by the parties, that'Harris took possession of the land, under his purchase, in 1797 or ’8, and he, and those claiming under him have occupied the same ever since, within the boundary of the interference, claiming under his title; and that the defendants were in possession claiming under him. And that Botton and wife, two of the lessors, in 1811, 'took possession of Ford’s three hundred acres, outside of the bounds of the interference, claiming an undivided interest in the sanie.
Upon the hypothesis of the belief of the foregoing facts, the Court, among other instructions, instructed the jury, that the defendants were estopped from relying upon the statute of limitation, as a bar to the plaintiffs recovery. And the principle involved in this instruction's the only point which we deem necessary to notice.
The principle is well established that, from the relation subsisting between landlord and tenant, the possession of the latter is generally deemed the possession of the former, and he is estopped to deny or controvert his title.
And it hás also been settled by this Court, that a person let into possession under an executory contract of purchase, looking up to his vendor for a title, occupies as quasi tenant, and, in some respects, the same relation subsists between them, as between landlord and tenant.
But, though a tenant is estopped to controvert the title of his landlord, he is not estopped to show that his title has. been extinguished, or has expired. Swan vs. Wilson, 1 Marshall, 99; Logan vs. Steele’s Heirs, 7 Monroe, 104. And even in the case of an ordinary tenancy, cases may occur, in which he will be permitted, from lapse of time, and the attitude which he has occupied in relation to his landlord, to rely upon the statute of limitation, as was settled by the Supreme Court, in the case of Willison vs. Watkins, 3 Peters, 43. The beneficent *438 object of the Legislature, in the enactment of the statute, the peace of society, and protection of occupants, all concur, in inculcating the propriety of the principle settled in the foregoing case.
Though the 2nd purchaser, who had the legal title, might, until he "was barred by time, have recovered the possession from the first purchaser, who was in under an executo - ry contract, and though the latter had treated the former as a trustee by filing a bill in eq. against him, to obtain the legal title-— still,there was no privity between them; they held —the one the legal title, the other the possession, in hostility to each other; &. there was no-, thing in their condition to es-top the first purchaser from rising the bar by time, or any other defence, against the other. The rpcord of a void decree may be used to show how the complainant claimed the land that was decreed to him.
*438 If the case °f an ordinary lease, when the' tenant fo fot into possession claiming the use and occupancy of the premises, for a term only, owing fidelity to his land-ford, and having no claim, present or prospective, to the fee, and bound by an obligation, both legal and moral, to surrender UP tde possession to his landlord, at the expiration of his lease, he may, under any circumstances, ari adv,erse holding for twenty years after his term expires, rely upon the statute as a bar against his land-l°rd’s right to possession — much more should a purchaser be permitted to do so, against his vendor, or others claiming under him, when he has been let into possession, un(for fos purchase. He holds the possession as his own and claims the- right to the title in fee. And, though jle fooks to his vendor for a title, he feels under no obligation to restore the possession; but uses and occupies ^ as d*s own rigLtful property. He may be evicted from the possession by the purchaser, who still holds tde and ^°> by reason thereof, as in all other cases of paramount legal titles, has the right of entry, -A-nd in a proceeding to evict him as quasi tenant, or havfog acquired the possession from his vendor, he might n°t be permitted to question the title.
But it does not from thence follow, that after he has , . , . . . . , . been permitted to occupy, claiming the premises as his-own, he may not be permitted to rely upon the statute-, and bar the right of entry of his vendor.
Indeed, it seems quite reasonable, that he should be permitted to do so, when he has paid up the full consideration, and for twenty years occupied the premises uninterruptedly, as his own. No equitable or moral obligation rests upon him to restore the possession, and he has not imposed on himself any legal obligation to do so; but, on the contrary, an equitable, legal and moral obligation, rests upon the vendor, to secure him in his possession, by making him a title. It would seem strange,, therefore, that a purchaser, who has occupied and used *439 the premises as his own, and been guilty of no breach of contract or of good faith, should be precluded by his vendor, who has' violated his obligations, legal and’moral, from relying upon the statute, to protect his possession. If so, a case occurs in which a man may take advantage of his own wrong.
But, if the foregoing views be untenable, (and we do not deem it necessary now to express a definite opinion upon them,) we cannot doubt of the defendants’ right to rely upon the statute, in the case before the Court.
Dupey, by an absolute sale of the land to Ford, disaffirmed his contract with Harris, and destroyed the relation between them. And, as was said by this Court, in the case of Logan vs. Steele's Heir's, 7 Monroe, 105, from the moment of the sale, Harris “could treat him as a stranger, and was no longer bound to look to him for a title;” and rhight, therefore, as was there settled, gainsay or controvért' his title.
Dupey, by his sale, stripped himself of all title, and forfeited all claim to allegiance or fidelity, from Harris. He placed it out of his power to afford protection, and Harris was no longer bound to look to him for it. He was not only left at liberty to controvert his title, but might set up the statute of limitation, or any other defence, to defeat his right to recover the possession.
And though Ford, his vendee, was invested with the legal title, and by reason thereof, had the right of entry, and might, until such right of entry was barred, have-recovered the possession; yet no privity of contract subsisted between him and Harris. He held the title claiming the absolute fee, and in hostility to the claim of Harris. Harris held the possession claiming it as his own, adverse to the claim of Ford, and against which he commenced a legal war, so soon as the title was conveyed to him. He, it is true, as a means of compelling him to convey and release his title, treated him as holding it in trust for his use, but he never treated himself as holding the possession under or for the use of Ford. Had he rescinded the contract, he might have been required by the chancellor, to restore the possession to Ford, who held the legal title. But he asked no rescis* *440 si0n, but asked only to be clothed with the legal title, to which he was equitably entitled, and which Ford had wrongfully obtained, the better to secure and protect his possession. It cannot, therefore, in the face of these facts, with any plausibility be contended that, he held in amity with Ford or his title. He held in hostility to both, and with a fixed determination never to surrender the possession to either-. He may surely, therefore, rely upon this as an adverse possession, within the letter and spirit of the statute.
But he not only commenced a suit, claiming the land as his own, but obtained an interlocutory decree in 1806, and a final decree" in 1811, against Ford, for the land, and has remained in possession for more than twenty years, since, before this action was brought.
Now, though the decrees as to Ford may be conceded to be void, they were competent to be used to show how Harris claimed to hold, and that his holding was adverse to Ford; as was decided in the foregoing case of Logan vs. Steele’s Heirs. And when thus used, in addition to the other circumstances in this case, they place it beyond doubt, that he held,, and claimed to hold, adversely, and might rely upon the statutory bar.
The judgment of the Circuit Court, is therefore reversed, and cause remanded, that a new trial may be granted.