## Holton, et al. v. Jackson.

(Decided June 3, 1919.)

### Appeal from Jefferson Circuit Court (First Chancery Division).

1.  Landlord and Tenant—Estoppel.—The possession of a tenant is the possession of the landlord, and one who enters as a tenant under another is estopped to deny the title of the one under whom he enters.
2.  Landlord and Tenant—Estoppel—Wife of Tenant.—The wife of a tenant who enters with her husband, holds subject to the tenancy, and the estoppel which applies to the tenant applies also to the wife and all persons in privity with the tenant.
3.  Landlord and Tenant—Desertion of Wife—Estoppel.—When the husband deserts the wife, leaving her in the sole possession of the property, she may, as could the tenant, renounce the tenancy and assert title in herself as against the landlord by bringing actual knowledge of such claim to the landlord; and if the land-

lord with such knowledge sleeps upon his rights until the statutory period expires, the claimant will be quieted in her claim of title to the property and the landlord estopped to assert his right to the property.

4. Quieting Title—Limitation of Actions.—The bringing of an action by one claiming title by adverse possession, to have his title quieted, does not stop the running of the statute of limitations in his favor; and if the answer and counterclaim of the defendant be not filed until after the expiration of the statutory period, although the petition was filed prematurely, a plea of limitation asserted in the reply must prevail.

5. Appeal and Error—Finding of Chancellor.—Although the trial court erred in its findings of fact and of law, yet if its conclusion was proper and no error to the substantial rights of the appellant was committed, the judgment will be affirmed.

E. L. McDONALD and HELM & HELM for appellants.

TYLER BARNETT and DODD & DODD for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted by Mrs. Clem C. Jackson, in the Jefferson circuit court against W. A. Mills and Lucy J. Holton, to quiet her title to a certain lot and house at No. 853 Fifth street, in the city of Louisville, which she claimed by adverse possession. The litigation came about in this way: Judge Wm. L. Jackson died March 25, 1890, leaving a widow, Sarah E. Jackson, and a daughter, Mrs. Lucy J. Holton, and two sons, Alex H., and William L. Jackson. By his will Judge Jackson left about $30,000 to his widow, Sarah E. Jackson. A part of this was from life insurance policies which was shortly thereafter collected. By consent of the members of the family Alex H. Jackson, who resided in Louisville, undertook to manage the estate of his mother, and on July 3, 1891, purchased for his mother, Sarah E. Jackson, the house and lot in question, which it was agreed Alex and his wife should use as a residence, and Mrs. Sarah E. Jackson was to use as a winter home, Alex agreeing to pay the taxes and keep the property in repair as consideration for the use of the premises. The property cost $4,800.00, of which $1,800.00 was paid cash by Mrs. Sarah E. Jackson, and the remaining $3,000.00 was raised by a mortgage on the property to a building and loan association. The house and lot were deeded to Sarah E. Jackson, and this deed was duly recorded in the office of the clerk of the Jefferson county court.

Shortly after the purchase of the property Alex and his wife, Clem C. Jackson, moved into the property, and for several succeeding years Mrs. Sarah E. Jackson spent her winters in the house with them, until about 1896, when there was a disagreement between Mrs. Sarah E. Jackson and her daughter-in-law, Mrs. Clem C. Jackson, after which time Mrs. Sarah E. Jackson ceased to go to the home, and when in Louisville she would stay with friends or at a hotel. Her son Alex, however, continued to manage her property and look after her investments. Part of her time she spent at Riverside, near Chicago, with her daughter, Mrs. Holton. She spent perhaps some four to six months of each year with her son Alex, in Louisville, from the purchase of the property, in 1891, up to 1896. For some years Alex H. Jackson was a member of the partnership firm of Jackson & Mueller, which firm was engaged in real estate business, but Alex began to drink and to dissipate to such an extent that he was unfit for business, and his mother took the management of her property and business from him and placed it with his partner, Arthur E. Mueller. When this was done Mueller, for Mrs. Sarah E. Jackson, entered into a written rent contract with Alex H. Jackson whereby Mrs. Sarah E. Jackson leased the house in controversy to her son, Alex H. Jackson, for a term of three years, from and after June 1, 1898, at a rental of $35.00 per month, Mrs. Jackson covenanting to keep her tenant, Alex H. Jackson, in quiet possession of said premises for the said term of three years. At this time Alex H. Jackson and his wife, Clem C. Jackson, were living together as man and wife. The dissipation of Alex had lost him his partnership in the firm of Jackson & Mueller, but he was employed upon a salary basis of $75.00 per month by the firm of Jackson & Mueller, and out of this $75.00 Alex was required to pay $35.00 per month rent to his mother for the use of the house, under his lease contract. Alex went from bad to worse, and finally, after holding his job on the salary basis and paying his rent for about four months, he left Louisville for the purpose of taking treatment for the liquor habit. His wife, Clem C. Jackson, remained in the house. He went to a small resort near French Lick, Indiana, and stayed there for a short time, then returned to Louisville in no better condition than when he went away. Shortly after his return to Louisville Alex decided to go to Chicago in an attempt to break away from his

old habits and to sober up. He has remained there most
of the time since. His rents being unpaid Mrs. Sarah
E. Jackson's agent, Mueller, called on Mrs. Clem C.
Jackson on December 8, 1898, at the residence on Fifth
street, and asked her to pay the rents. At the time Mrs.
Clem C. Jackson was in bed, suffering from a broken
limb. She protested she did not have the money with
which to pay the rent and, as she says, asked Mueller to
provide some money from the partnership firm of Jack-
son & Mueller for current expenses of the house. She
also testifies that she then claimed the house as her own,.
and that when Mueller demanded possession and asked
her to vacate the house she refused; and she further
testified that Mueller asked her what she would take to
vacate the house and she told him $6,000.00, and that
she would not leave it unless paid that sum.

Mueller testifies that Mrs. Clem C. Jackson called
him on the phone and asked him to come to her house to
see her, and that when he reached the house, she asked
him to furnish money for her current expenses; that she
did not claim the house as her property but that she did
say she would not move out or give possession; that she
then claimed that her husband, Alex H. Jackson, was only
temporarily absent. Alex went away April 13, 1899,
saying he would soon return, but has never lived with ap-
pellee since. She did not pay the rents. In October,
1899, Sarah E. Jackson took her affairs out of the hands
of Mueller and placed them with the Fidelity Trust Com-
pany, as her agent, and the Fidelity Trust Company,
through its agent, Meddes, undertook to get Mrs. Clem
C. Jackson to vacate the premises, but she declined and
asserted ownership of the property in herself.

On April 2, 1900, Sarah E. Jackson instituted an
action in ejectment against Clem C. Jackson for the pos-
session of the house and lot in question. To this action
in ejectment Mrs. Clem C. Jackson filed the following
answer:

"The defendant denies that the plaintiff, Sarah E.
Jackson, is the owner of the house and lot described in the
petition. She denies that the plaintiff is the owner in
fee simple of the property, or by reason thereof plaintiff
consented to allow defendant and her husband to keep the
same, rent free.

"She denies that she and her husband have separated, although said husband is temporarily absent from this city."

This is the whole of the answer, and there is no prayer to it, but it is verified by the affidavit of the appellee, Clemmie Jackson, dated September 29, 1900, and it was filed in open court January 19, 1901.

No further steps were taken in the ejectment proceedings until after the institution of the foreclosure proceedings to which we later advert. In August, 1900, appellee, Clem C. Jackson, visited her husband in Chicago, and made an effort to induce him to return to their home in Louisville. She made a similar attempt in the summer of 1901, but without success.

The mortgage executed upon the Fifth street property to a building and loan association, at the time it was purchased in 1901, had never been satisfied, although some interest had been paid upon it. On October 11th, 1901, the building and loan association instituted its action against Mrs. Sarah E. Jackson to foreclose its mortgage on the house and lot in controversy, and as there was no defense to the suit, judgment was entered directing a sale of the property to satisfy the mortgage debt. About the same time the ejectment suit instituted by Mrs. Sarah E. Jackson was dismissed without prejudice. In May, 1902, the property was sold, at which sale appellant, W. A. Mills, for Sarah E. Jackson, became the purchaser at the price of $3,050.00, and very soon thereafter a deed was executed to Mills by the master in chancery. The money with which this judgment was satisfied, as well as the $1,800.00 which was paid at the time of the purchase of the property, was provided and paid by Mrs. Sarah E. Jackson, and this is not controverted. After the deed was made to Mills a writ of possession was issued on April 15, 1902, in Mills' favor, and against Mrs. Sarah E. Jackson, for the property which he had purchased. The officer took the writ and called on Mrs. Clem C. Jackson, at the residence on Fifth street, for the purpose of executing the same, but Mrs. Clem C. Jackson refused to give up possession, telling the officer that her name was not Sarah E. Jackson, the person named in the writ, and therefore without force as to her. Mrs. Clem C. Jackson was not a party to the action to foreclose the mortgage, but after the officer had visited the house for

the purpose of delivering the possession to the purchaser, Mills, and had returned the writ showing the fact that Mrs. Clem C. Jackson was in the possession of the premises, the name of Clem C. Jackson by some means appeared in the writ, and this matter was brought to the attention of the chancellor, and the whole proceeding was delayed, pending an investigation, which ended in a quashal of the writ as against Clem C. Jackson on May 15, 1902. Nothing further was done to oust Mrs. Clem C. Jackson from the premises in question until after she, as plaintiff, instituted this action on May 28, 1914, to quiet her title and to be adjudged the absolute owner of the entire property. Her claim can be sustained, if at all, upon fifteen years' adverse possession. In bringing her action she fixed December 8, 1898, as the date from which her adverse holding and claim dates. At that time she was living with her husband as a member of his household, and he was then the tenant of Mrs. Sarah E. Jackson.

On November 14, 1914, Mrs. Holton and Mills filed their answer and counterclaim in which they asserted title to the property under Mrs. Sarah E. Jackson, and denied the title and ownership of appellee, Clem C. Jackson, and by way of estoppel averred that she entered possession of the property as the wife of Alex H. Jackson, who was the tenant of Sarah E. Jackson, and that appellee and her said husband held the premises as tenants from 1891 up to April 13, 1899, when Alex left appellee, and that appellee thereafter held and claimed under the written lease contract, which was then in existence. An estoppel against appellee, Clem C. Jackson, was also pleaded in connection with the answer she filed in the ejectment suit commenced by Sarah E. Jackson, and which answer is copied above.

The possession of a tenant is the possession of the landlord. One who enters as a tenant under another is estopped to deny the title of the one under whom he enters until the expiration of the term of the tenancy, or the tenant vacates the premises and surrenders same to the landlord. The possession obtained by a tenant is presumed to be amicable and in harmony with the title of the landlord until the contrary is shown by clear and convincing evidence. The general rule is that a person once a tenant is presumed to remain such so long as he holds possession of the lands demised. The duration of

the estoppel is not limited to the expiration of the lease. 16 R. C. L. 653.

One who enters under a tenant is and must be regarded as subservient and not adverse to the landlord to the same extent as the tenant. Where the husband holds lands as a tenant which his wife occupies with him as a home, and the wife's claim to the possession or interest in the land is under her husband, an estoppel against the husband will extend to her. 16 R. C. L. 671; Notes: 30 L. R. A. (N. S.) 1102.

The wife of a tenant who enters as wife and by reason of the marriage relation between her and the tenant, holds subject to the tenancy and cannot deny the title of the landlord so long as her husband continues to be tenant and she resides with him as wife. The presumption is that the husband is the head of the household and that he obtained and holds the premises not only for his own use but for the use and benefit of his wife and family, and her possession must be considered as amicable to the landlord so long as she remains a member of the household of the husband and tenant. In Tiffany on Landlord and Tenancy, p. 489, it is said: "A tenant's wife who lives upon the land with her husband and whose entry thereon is by reason of her husband's right of possession, would seem to be within the rule of preclusion or estoppel."

In 2 Corpus Juris, 102, the text is: "Where the husband is in possession as head of the family, recognition of the title of the true owner by him will conclude his wife after his death. This is true notwithstanding the facts that the husband is a drunkard and that the wife supports the family by her industry."

The same text on page 104, says: "The taking of a lease by a husband who in the eye of the law is the head of the family is binding upon the wife in so far as it operates as a recognition of the title of the true owner."

Underhill on Landlord and Tenant, section 564, the rule is stated as follows:

"The estoppel which is binding on the tenant applies with equal force to every person who by reason of privity with him enters upon possession of the demised land during the term of the lease. For where the relationship of landlord and tenant is once established the estoppel attaches to all persons who succeed to the possession of the premises, through or under the tenant.

They arc all bound by the implied obligation of the original tenant to acquiesce in the title of his landlord to the same extent as though it were their own.

"Where the relationship of landlord and tenant is once established it attaches to all who may succeed to the possession under the tenant."

See also Taylor's Landlord and Tenant, sect. 629, and Jones on Landlord and Tenant, sect. 682.

Let us apply these principles to the facts of this case. The husband, Alex H. Jackson, was the tenant of his mother, Sarah E. Jackson, from the purchase of the house and lot in 1891 up to the time he abandoned his wife and the premises on April 13, 1899, because he entered under an arrangement with his mother to hold for her and which acknowledged her as owner and landlady, and on June 1, 1898, executed and delivered to her agent the written lease in evidence, whereby he undertook to and agreed to pay to his mother $35.00 per month, rent for the use of the house and lot for the term of three years, and to surrender possession thereof at the end of the term. This lease expired on the 1st day of June, 1901. He was living in the house under it at the time he deserted his wife, on April 13, 1899. His wife entered with him by reason of the marriage relation and not by reason of any contract relation which she had with the owner, Sarah E. Jackson. She manifests no right whatever to the property, except by adverse possession, and since she entered and held possession of the premises with her husband as tenant from 1891 up to April 13, 1899, she was estopped to that date to deny the title of Mrs. Sarah E. Jackson, or to claim or hold the lands otherwise than in subserviency to the leasehold. This being true, her refusal to pay the rent or surrender the premises to Mueller on December 8, 1898, did not amount to a disseizin or an assertion of paramount title in her because after that time she continued on the premises as the wife of the tenant, Alex H. Jackson, and he all the time acknowledged himself to be the tenant of his mother, Sarah E. Jackson. The Fidelity Trust Company became the agent of Mrs. Sarah E. Jackson in October, 1899, and took charge of the property in question. It sent its agent, Mr. Meddes, to call upon Mrs. Clem C. Jackson, then in possession of the house, and demanded the rents, and in case she refused to pay rents, to demand

possession of the premises. This the agent did, on October 31, 1899, and Mrs. Clem C. Jackson specifically denied the right of Mrs. Sarah E. Jackson to the possession and asserted ownership of the property in herself. This assertion of title and denial of the right of Mrs. Jackson was made to her agent and, therefore, made to Mrs. Sarah E. Jackson. She was bound to take notice of the claim of Mrs. Clem C. Jackson, which amounted to a disseizin sufficient to start the statute of limitations running, because before that time Alex H. Jackson, the tenant, had deserted his wife, and she was in the sole possession of the property. So situated she could renounce the title of her landlord by bringing knowledge to her of such adverse claim and thus set the statute of limitations running in favor of the claimant, and this she did on October 31, 1899. But to do so, it was incumbent upon her to do some act which amounted to notice, or bring actual knowledge to the owner, Sarah E. Jackson. The general rule is stated to be that a tenant cannot deny the title of the landlord until he surrenders the possession. There are several exceptions to this rule, one of them being that when a tenant openly disclaims to hold under the lease and thereby became a trespasser and his possession adverse, the relation of landlord and tenant is dissolved, and a right of action immediately inures to the landlord, and if he, with full knowledge of the facts, sleeps on his rights and allows the statutory period to elapse, his right of action is barred. Willison v. Watkins, 3rd Peters (U. S.) 43.

This court, in Ogden v. Walker's Heirs, 6 Dana 420, stated the rule as follows:

"Although it is a sound and well settled rule of law, that a quasi tenant shall not dispute the title of his landlord, as long as the contract subsists and is recognized between them, nevertheless, if the landlord, shall have been notified by such a tenant, that he has renounced the contract, and will not continue to hold under him longer, but will hold against him, and the tenant shall, after such a virtual eviction, continue in adverse possession in fact for twenty years, he may be protected in that possession by the statute of limitations."

Again, in the case of South v. Marcum, 22 Rep. 641, 58 S. W. 527, the court said:

"While the rule is that a tenant can not ordinarily set up an adverse possession, and will be *prima facie* deemed to continue in that character so long as he remains in the occupation of the land, it is well settled that a tenant who has openly disavowed the title of the landlord and notoriously held adversely to him by clear and positive claim on the part of the tenant with the knowledge of the landlord, will be protected by the statute of limitation after the lapse of the statutory period. (Angel on Limitations, section 444.)   This rule was declared after a full investigation of the subject by the United States Supreme Court, in Willison v. Watkins, *supra;* and was approved by this court in Sebastian v. Ford, 6 Dana 438, and Whipple v. Earick, 93 Ky. 121."

A disseizin can be worked by a tenant against his landlord only by bringing his disclaimer and hostile holding to the knowledge of the landlord.   This rule is well stated in 2 Corpus Juris, p. 78, where it is said:

"If the owner has actual knowledge that the possession is adverse to his title, the occupancy need not be open, visible, and notorious, and within this rule actual knowledge of the agent will be implied to his principal. Notoriety is important only where the adverse character of the possession is to be brought home to the owner by presumption, because no other person has any legal interest in the question or right to be informed by notoriety or otherwise."

Mrs. Jackson seems to have recognized this rule and to have been acquainted with the facts, because on April 3, 1900, she instituted a suit in ejectment against appellee for the recovery of the property in question, alleging that appellee, Clem C. Jackson, was setting up claim to the property.   Appellee, Clem C. Jackson had not been in the adverse possession of the property on Fifth street for as much as 15 years at the time of the commencement of this action on May 28, 1914, but appellants did not file their answer, setting up claim to the premises until November 14, 1914, which date was something more than 15 years from the time the statute of limitations began to run in favor of appellee, Clem C. Jackson.   The commencement of the suit in May was only a continuation of the assertion of title in appellee, and did not operate to stop the running of the statute in favor of appellee and as appellants did not answer and

assert title to the property until November 14, 1914, which was more than fifteen years after the statute of limitations began to run in favor of appellee on October 31, 1899, her title was perfected in her before it was challenged by appellants, Mrs. Holton, et al. In other words, had the action been commenced by Mrs. Holton, et al. on November 14, 1914, the date the answer and counterclaim were filed to recover the property, it would have been barred by the statute of limitations, because more than 15 years had elapsed at that time since the renunciation of the tenancy and the disseizin by Mrs. Clem C. Jackson on October 31, 1899. 2 Corpus Juris 109; Miller v. East, 91 Texas 335, 43 S. W. 263.

The bringing of the action by Mrs. Clem C. Jackson before the full period of 15 years had elapsed by which her title by adverse possession was perfected, did not stop the running of the statute in her favor, and as appellants did not assert title to the property in themselves until November following, and more than 15 years after their right of action first accrued, their right of action was completely barred and they could not, therefore, recover.

Where one who claims title to land by adverse possession brings an action to be adjudged the owner of the property and quieted in his possession, before the expiration of the statutory period from his entry, such action does not stop the running of the statutes in his favor, because it is but a reassertion of his claim to the property; but the rule is different where the legal titleholder brings the action against one claiming title by adverse possession, for the commencement of the action in such case will stop the running of the statutes in favor of the claimant by adverse possession. So it follows that even though one claiming title by adverse possession should bring his action prematurely, yet if the defendant who holds the legal title delays the filing of his answer and counterclaim, whereby he asserts title in himself to the land in controversy until after the lapse of 15 years from the entry of the adverse claimant, his answer and counterclaim will be treated as the commencement of the action by him for the recovery of the property from the adverse claimant, and a plea of limitation by the adverse claimant will prevail.

If, however, one claiming title by adverse possession alone, institutes his action prematurely seeking to be adjudged the owner of the land and to have his title quieted, his cause will fail and his action must necessarily be dismissed, if the legal titleholder traverse the allegations of the petition; and no matter how long the answer may be delayed it will relate to the time of the filing of the petition, and the issue will be as to whether the plaintiff had held and claimed the lands adversely as much as fifteen years next before the filing of the petition and not for fifteen years next before the filing of the answer traversing the allegations of the petition.

Ordinarily a suit of this kind is commenced by the legal titleholder against the claimant in possession, and the statute of limitations is presented by the answer, but in this case the plaintiff claims title by adverse possession only and brought her action to quiet title fourteen years and seven months after the disseizin, and the statute of limitations began to run in her favor. She was calculating the time from December 8, 1898, when she first refused to pay rents, and so estimated the full period of 15 years had transpired when she sued. Had the appellants, Mrs. Holton, et al., claiming to be the owners through Mrs. Sarah E. Jackson, commenced this action on November 14, 1914, the day they filed their answer, a plea of the fifteen year statute of limitations would have barred and tolled their right of recovery, and under the well established rule announced in the foregoing cases, appellant's right to the property was barred and tolled at the time they undertook to assert it by their answer and counterclaim in November, 1914.

Plaintiff's cause should have been dismissed, because prematurely commenced, her claim being based upon adverse possession, and the 15 year period not having fully expired, but as appellants, on November 14, 1914, made their answer a counterclaim and prayed to be adjudged the owners of the property in controversy and entitled to possession thereof, the plea of limitation presented by the reply was a good estoppel. The trial court erred in its findings of fact and of law. However, the final conclusion reached sustaining Mrs. Clem C Jackson's right to the property by adverse possession is not prejudicial error for the reason that appellants could not have maintained a cause of action to recover the

property at the time they first asserted their claim by their answer and counterclaim, limitation having then barred them.

No error to the prejudice of the substantial rights of appellants appearing, the judgment is affirmed.