John H. PIERSON, and Gynelle Pierson, husband and wife, Appellants,

v.

Harold COFFEY, and Jerry Deal, Individually and doing business as C & D Harbor Service; C & D Harbor Service, Inc.; and Kenneth E. Love, Individually and doing business as Marine Service, Jointly and Severally, Appellees.

Harold COFFEY; and Jerry Deal, Individually and doing business as C & D Harbor Service; and C & D Harbor Service, Inc., Cross-Appellants,

v.

John H. PIERSON; and Gynelle Pierson, husband and wife, Cross-Appellees.

Court of Appeals of Kentucky.

Sept. 27, 1985.

Rehearing Denied Dec. 6, 1985.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court March 20, 1986.

J. William Phillips, Murray, for John H. Pierson and Gynelle Pierson.

Timothy A. Langford, Hickman, for Kenneth E. Love.

Thomas L. Osborne, Paducah, Larry G. Kelley, Wickliffe, for Harold Coffey, Jerry Deal, and C & D Harbor Service, Inc.

Before HAYES, C.J., and GUDGEL and WHITE, JJ.

GUDGEL, Judge:

This is a case of first impression. The principal issue is whether a commercial barge fleeting service company, which conducts its business on the Mississippi River by using boulders and anchor buoys placed on the riverbed without the consent of adjacent riparian property owners, may be adjudged liable for damages for trespass. The trial court adjudged that it could not. We disagree with the court's conclusion on this and another issue, although we agree with several of the court's other rulings. Hence, we affirm in part, and reverse and remand in part.

Appellants claim title to riparian property located on the Mississippi River near Hickman in Fulton County. Appellees Coffey and Deal operate a barge fleeting service company (C & D) on the river adjacent to the shore line of appellants' property. C & D's business consists primarily of providing towing services and overnight storage facilities for barges traveling on the river.

On February 15, 1982, C & D entered into a one year lease agreement with appellants. Under the terms of the lease, C & D acquired a right to utilize appellants' shoreline to "tie off" barges which were placed in its overnight care. However, two months later C & D entered into a separate agreement with appellee Kenneth Love (Love), who had obtained a permit from the

Army Corps of Engineers authorizing the placement of anchor buoys. The agreement provided that Love would place several anchor buoys on the riverbed off appellants' shoreline. Further, Love agreed in exchange for a stated consideration that C & D would have the exclusive right to use the buoys for a period of five years. Pursuant to appellees' agreement, Love proceeded to place several twenty- to thirty-ton rock boulders on the riverbed off appellants' shoreline, and attached mooring cables and anchor buoys to them. Appellants did not consent to the placement of the boulders.

C & D commenced utilizing Love's boulders and buoys in the operation of their business. Because of the placement of the boulders, C & D no longer had any need to utilize appellants' shoreline for any purpose. On September 24, 1982, therefore, C & D wrote a letter to appellants which expressly repudiated the parties' lease agreement. This action followed.

Appellants sought compensatory damages for breach of lease and trespass against Coffey and Deal individually, as well as against their corporation, and against Love. They also sought an order requiring appellees to remove the disputed boulders from the riverbed. Appellees defended against the action by claiming that appellants do not have valid title to the portion of the riverbed on which the boulders were placed. The court, however, sustained appellants' subsequent motion to strike this defense, and on March 14, 1984, entered a partial summary judgment against appellees on the issue of liability.

On July 23, 1984, the court entered a final judgment. The court adjudged that Coffey and Deal individually, and their corporation, are jointly liable to appellants for the breach of the 1982 shoreline lease. However, the court reversed its summary judgment of March 14, 1984, and adjudged that although appellants have title to the portion of the riverbed on which Love placed the disputed boulders, their rights as riparian owners are subordinate to appellees' right to utilize the riverbed in aid

of navigation. Moreover, because the court concluded there was no evidence that appellees' activities were significantly interfering with appellants' riparian rights, it also adjudged that appellants are not entitled either to recover damages for trespass, or to require appellees to remove the disputed boulders and anchor buoys. This appeal and cross-appeal followed.

As noted earlier, the principal issue presented on direct appeal is whether the trial court erred by failing to find that appellees' activities have trespassed upon appellants' riparian rights. This issue is troublesome, and the relevant authorities from this and other jurisdictions have not had occasion to address it. However, for the reasons stated hereafter, we conclude that the court erred by finding that appellees may not be adjudged liable for trespass.

■ This jurisdiction adheres to the view that riparian property owners, such as appellants, own to the center of the stream or river. *Whitson v. Morris,* 304 Ky. 447, 201 S.W.2d 193 (1946). This riparian right is subordinate, however, to the public's right to utilize navigable waters and to make improvements in aid of navigation. *Commonwealth, Department of Highways v. Thomas,* Ky., 427 S.W.2d 213 (1968). Appellees argue, since it is clear that appellants have title to the riverbed adjacent to the shoreline on which the disputed boulders were placed, that the placement of the boulders, and the subsequent use of them to operate a barge fleeting service business, are activities protected by the public's superior "right of navigation." Appellants argue in response that appellees' activities do not fit within any recognized definition of "the public right of navigation," and hence, amount to nothing more than an impermissible trespass upon their riparian property.

■ As far as we have been able to ascertain, the issue of whether the particular activities complained of in the instant action are included within the scope of the "public right of navigation" has never been addressed in a reported case. Courts in

this and other jurisdictions, however, have utilized several general principles to determine whether a given activity falls within the definition of the right. The "public right of navigation" includes the right to navigate the waterways in the strictest sense, that is, for travel and for transportation. *Silver Springs Paradise Co. v. Ray,* 50 F.2d 356 (C.A.5th 1931) *cert. denied* 284 U.S. 649, 52 S.Ct. 29, 76 L.Ed. 551; *see also Warner v. Ford Lumber & Manufacturing Co.,* 123 Ky. 103, 93 S.W. 650 (1906). The right also includes the right to use the public waterways for recreational purposes such as boating, swimming, and fishing. *Munninghoff v. Wisconsin Conservation Commission,* 255 Wis. 252, 38 N.W.2d 712 (1949); *Silver Springs Paradise Co. v. Ray, supra.* Moreover, the "public right of navigation," whether for commercial or recreational purposes, necessarily includes the right of temporary anchorage and the right of incidental use of the riverbed. *Hall v. Wantz,* 336 Mich. 112, 57 N.W.2d 462 (1953); *Munninghoff v. Wisconsin Conservation Commission, supra.*

Appellees rely on these general principles in arguing that any barges traveling the Mississippi River are entitled to utilize appellants' riverbed, without permission, for temporary anchorage purposes. They urge it follows that their particular activities are also protected by this right of temporary anchorage. We have concluded, however, that appellees' argument is fallacious.

▪ Appellees are not themselves engaged in activities which constitute "navigation," as defined by the relevant authorities. Moreover, it is clear that appellees' activities do not fall within the purview of the public's right to *temporarily* anchor vessels in a navigable waterway. Here, Love dropped boulders on appellants' riverbed in order to provide a *permanent* anchorage facility for C & D's offshore fleeting service business, and to enable him to charge and earn rental fees to be paid by C & D. Further, C & D is not utilizing Love's anchor buoys to temporarily anchor *their own* vessels for recreational or com-

mercial purposes. Rather, they are using them to conduct a commercial business for profit which, in exchange for a fee, makes permanent overnight anchorage facilities available to barges using the river. Thus, the situation in the instant action is factually much different from the typical situation, in which a vessel traveling the river for commercial or recreational purposes drops anchor for some temporary period as an incident of its journey on the river.

The reported case most similar to the instant action is *Hall v. Wantz,* 57 N.W.2d 462 (Mich.1953). In that case, the owner of a boat continuously anchored it off of a riparian owners' land and conducted a fishing business from the vessel. We quote, with approval, the following statements from the court's opinion in that case:

> [A] riparian owner's property rights to subaqueous lands are subject to an easement in the public for navigation purposes and are subject to the right to anchor as an incident to the right of navigation, nevertheless the right of navigation does not include, as an incident thereto, the right to anchor indefinitely off the riparian owner's premises....
>
> ....
>
> Defendant, in the instant case, is not confining himself to the exercise of the rights of the public generally to navigation, but goes beyond that to engage in a practice not incident to or a part of the right of navigation, namely in permanent or indefinite anchoring of his "ark" to plaintiff's subaqueous lands and keeping the same in waters over such lands for the purpose of conducting a business there.

*Id.* at 464, 465.

Consistent with these statements, we hold that the activities of appellees Love and C & D are not activities which can reasonably be construed to be within the definition of the "public right of navigation," as defined in the reported cases. It follows, therefore, that the trial court erred by finding that appellees may not be adjudged liable for trespass. Hence, the por-

tion of the court's judgment to the contrary must be reversed.

▮ Love further contends that his placement of the boulders was lawful because it was authorized by a permit issued to him by the Army Corps of Engineers. We disagree. The requirement that a person must obtain a permit before he or she may place obstructions in the river does not confer any interest in riparian property upon the recipient of the permit. Rather, this requirement merely safeguards the public right of navigation by ensuring that there will be proper regulation and placement of any obstructions submerged in navigable waters. *See, Norfolk Dredging Company v. Radcliff Materials, Inc.,* 264 F.Supp. 399, 402 (1967). Moreover, the permit obtained by Love expressly stated on its face that it did not convey any interest in property. Hence, contrary to Love's contention, it is clear that the permit did not authorize him to place the disputed boulders on appellants' riparian property without their consent.

▮ C & D makes several further arguments in defense of its position that it may not be adjudged liable for trespass. These arguments depend upon provisions of the parties' 1982 shoreline lease. However, since C & D repudiated the 1982 lease, it is hardly in a position to argue that certain provisions of that lease absolve it from liability.

▮ In light of our conclusions to this point, we need not address appellants' second contention that the court erred by failing to find that appellees are denying them access to their property. Further, we elect not to address appellants' remaining three contentions. CR 76.12(4)(c)(ii) provides that the "Statement of Points and Authorities" portion of a party's brief shall list "the authorities cited on that point and the respective pages of the brief on which the authorities are cited." Moreover, CR 76.-12(4)(c)(iv) provides that an appellant's brief shall contain an argument "conforming to the Statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law." Here, appellants' brief fails to cite any authorities in its "Statement of Points and Authorities" section in support of their remaining three contentions. Further, appellants merely reiterate their "Statement of Points and Authorities" in the argument portion of their brief and fail to make any argument or cite any authorities to support these contentions. Rather than ordering appellants' brief stricken, however, we have elected not to consider appellants' remaining three contentions as an appropriate penalty to impose for their failure to comply with CR 76.12. *Milby v. Mears,* Ky. App., 580 S.W.2d 724 (1979).

Appellee Love urged at oral argument that if we reversed the trial court as to the trespass issue, he should be given an opportunity on remand to contest the validity of appellants' title. Appellants' counsel conceded this point. Hence, we also reverse that portion of the court's judgment which adjudges that appellee Love is not entitled to contest the validity of appellants' title. However, we note that in a recent decision of this court we affirmed a judgment upholding the validity of appellants' title. The Kentucky Supreme Court has our decision pending before it on a motion for discretionary review. Appellee Love's right to contest appellants' title on remand, therefore, will depend upon whether the Supreme Court ultimately reverses this court's decision.

On cross-appeal, appellees Coffey and Deal first contend that the trial court erred by adjudging that they are personally liable for the breach of the shoreline lease. We disagree.

▮ The general rule is that one who enters into a contract, for the benefit of a corporation which has yet to be incorporated, remains personally liable on the contract subsequent to incorporation, absent an agreement otherwise. *See,* Annot., 41 A.L.R.2d 477 (1955); 18 Am.Jur.2d *Corporations* § 131 (1965); *Kennedy v. Fulton Mercantile Co.,* Ky., 108 S.W. 948 (1908). Here, it is undisputed that Coffey and Deal

signed the disputed lease agreement individually as incorporators of C & D Harbor Service, Inc. Therefore, they are jointly and severally liable to appellants for the corporation's breach of the lease. Further, contrary to their contention, we conclude it is of no significance that appellants may have known Coffey and Deal's corporation would take over the lease shortly after it was executed.

Next, Coffey and Deal contend that the trial court erred by failing to allow them to contest the validity of appellants' title. We disagree.

 The general rule is that a tenant in possession of property may not dispute the title of his or her landlord. *Campbell v. Hensley*, Ky., 450 S.W.2d 501 (1970). Moreover, a tenant who remains in possession as a holdover tenant after the repudiation or termination of a lease is estopped to deny the landlord's title. *Kentucky-West Virginia Gas Company v. Browning*, Ky., 521 S.W.2d 516 (1975); *Holton v. Jackson*, 184 Ky. 559, 212 S.W. 587, 590 (1919). Here, it is undisputed that appellees Coffey and Deal and their corporation entered into a landlord-tenant relationship with appellants. Further, they have clearly remained in possession of appellants' riparian property subsequent to their repudiation of the shoreline lease. Thus, they are holdover tenants and as such are estopped to contest the validity of appellants' title.

The court's judgment is affirmed in part, and reversed in part, and this cause is remanded for further proceedings consistent with the views expressed in this opinion.

All concur.