S. J. GAMBLE, EXECUTOR, APPELLANT, vs. J. R. G. HAMILTON AND H. B. HOWSE, APPELLEES.

1. Where B. has paid the taxes of H. for several years, and then purchased at a tax sale, and after such purchase has written to H. that he has paid the taxes on the land and taken the receipt as sold for taxes, but that it will be all right, and then gets a tax deed upon the certificate of sale and does not inform H. of that fact, and subsequently agrees to pay the taxes for H., and then makes a contract with H. for the purchase of the land, the tax deed is fraudulent and void as against H. and those in privity with him.

26

2. One who purchases land with actual notice that another claims it and is exercising dominion over it, takes it subject to all the rights and equities of the person so claiming and exercising dominion over the land.

3. One who claims title to land, legal in its character, cannot maintain a bill in equity against the person in possession of the land, or any part thereof, to remove a cloud from his title.

4. Where B. purchased land from H. by parol contract, and H. put him into possession, and part of the purchase money remained unpaid, the possession of B. is not adverse to the title of H., but in subordination thereto.

5. A party may convey land held in the actual possession of another, provided that such actual possession is not adverse.

6. Where a party endeavors to adjust and settle a disputed claim between vendor and vendee of a parcel of land, and fails, and some years afterwards purchases the land from the said vendor, with his own funds, and obtains a deed thereto, he acquires the title subject to any existing obligations of the vendor.

Appeal from the Circuit Court for Sumter county.

The facts in the case are stated in the opinion of the court.

*Hocker & Mabry* for Appellant.

*R. B. Hilton and J. J. Finley* for Appellees.

(Judge Young, of the Fourth Circuit, sat in the place of Mr. Justice Mabry, who was disqualified.)

YOUNG, Circuit Judge:

A bill was filed in the Circuit Court in and for Sumter county, in February, 1884, by J. R. G. Hamilton against S. J. Gamble, as executor of the last will and testament of L. B. Branch, deceased.

The bill alleges the sale to, and conveyance from, one Howse to complainant, on the 8th of November, 1883, of a quarter section of land situated in Sumter county; that claimant went into possession of the land under said conveyance, and was in possession at the time of filing the bill; that on the 15th of November, 1883, defendant commenced proceedings against complainant for a forcible entry and detainer of said land, which was still pending; that said Howse was, in 1873 and 1874, and for many years prior thereto, the owner of said land and seized in fee thereof; that in 1874 said land was sold for the taxes of 1873 and that defendant's testator purchased at the sale, and the following year obtained a tax deed; that at the time of such purchase, and at the time the tax deed was obtained, said testator was the agent of Howse for the payment of the taxes on the land, and that the purchase at tax sale and obtaining the tax deed was a fraud upon Howse.

The bill was demurred to, one of the grounds being that Howse was not a party to the bill. This ground of demurrer was sustained and the others overruled, and the bill was amended by making Howse a party complainant, and by alleging that the tax deed was a cloud upon the title of complainants and a fraud upon their rights. The prayer of the bill is, that the tax deed "be set aside and declared to be null and void, and that the defendant be enjoined from further prosecuting the suit for forcible entry and detainer." The defendant answered the amended bill, admitting that

Howse made a deed to Hamilton, as alleged; denies that defendant's testator was the agent of Howse for the payment of the taxes on the land ; and avers that Howse placed no funds in his hands for the payment of taxes, either before or after the sale ; admits that he did, for accommodation, pay the taxes of persons who placed funds in his hands for that purpose ; alleges that after respondent's testator obtained the tax deed, and some time in the year 1876, the said testator proposed to Howse, " in order to quiet his title and possession," to purchase all claim of said Howse to the land, and that Howse accepted this proposition and agreed to take $150, of which $30 was paid cash, and that respondent believed that all of it had been paid until Howse wrote to the widow of his testator claiming that there was an unpaid balance of $120 ; avers that after this transaction between Howse and his testator, Branch, Howse "acknowledged Branch to be the owner," and that the tax deed was put on record by Branch, Howse agreeing and consenting thereto, and offering to give bond that no one should redeem from the tax sale, or interfere with the tax deed ; avers that the widow of Branch was acting as the agent of respondent in the management of the estate of Branch, and that she would have paid the sum of $120, claimed by Howse to be due, but for the fact that the complainant, Hamilton, to whom she had gone to write the reply to Howse, advised her not to pay it, and offered to obtain a "title" to the land from Howse for the executor ; that complainant, Hamilton, saw all the letters from Howse, and wrote

the answers for Mrs. Branch, and was fully in-
formed as to all the facts in relation to the
claim of Branch during his lifetime, and his executors
afterwards, to the land and the possession thereof.
The answer also denies that Hamilton ever went
into possession under his purchase from Howse, but
avers that he has at various times, by threats to ten-
ants and attempts to collect rent from them and other
"stratagems," endeavored to get possession of the
land, but has failed to acquire any such possession
"as would be lawful or adverse to respondent," and
also alleges that the "case of forcible entry and de-
tainer" has been dismissed. The answer was accom-
panied by a plea of seven years' continued adverse
occupation and possession of the land under claim of
title founded upon a written instrument. A general
replication was filed to the answer and plea. There
was a cross-bill filed by the executor of Branch, alleg-
ing that Branch had, in 1876, purchased the land from
Howse for $150, and paid part of the purchase money,
and that Howse had put Branch into possession, which
possession he held till his death, and that since his
death it has been held by the executor; and also alleg-
ing substantially the same facts set forth in the an-
swer, and praying that Hamilton be enjoined from
"committing waste, spoil or destruction, and from
taking possession or cutting timber or other trees
growing on the land, or interfering with orator's ten-
ants and crops growing on the land, and from any and
all interference with said land in any manner," and
also praying that Hamilton be decreed to hold the

land in trust for, and to convey to the executor of Branch. There was a demurrer to the cross-bill which was sustained, and then it was amended by making Howse a party defendant and by adding to the prayer a prayer to have the deed from Howse to Hamilton cancelled, "made null and set aside as a cloud upon the title of the said Branch." Hamilton answered the cross-bill and denied that Branch bargained for or purchased the land in 1876, but admits that he was informed that there was a negotiation for its purchase in 1877; but avers, on information and belief, that it was abandoned by Branch, and that Howse did not put him into possession of the land; that he, Hamilton, purchased from Howse in November, 1883, for the sum of $2,000; that the possession of Branch did not commence seven years before the filing of the original bill, and denies that Branch or his executor were in the legal and 'peaceable possession for seven years prior to 1883; admits the sale for taxes in 1874, and the making of the tax deed to Branch in 1875, and alleges that at that time Branch was the agent of Howse for payment of the taxes; denies that he acted as the agent for the executor or for Mrs. Branch; denies that he advised Mrs. Branch; but admits that he wrote the letters for her to Howse at her request, and avers that he did all in his power to promote a settlement with Howse; avers that one Nellie Gaither was a tenant occupying a house on the land, and that he informed her that he had purchased the land, and that she attorned to him and paid him rent for two months, when the executor or Mrs. Branch induced her to pay

the rent to them or one of them ; alleges that he took possession of and cleared and fenced about one and a half acres of said land and erected a house thereon, which is in the possession of his tenant.  Howse also answered and admits the making of a contract with Branch for the sale of the land for $150, and the payment of $30 as part of the purchase money ; but avers that the contract was made in 1877, and that afterwards Branch refused to pay the balance ; avers that Branch concealed from him that he had a tax deed to the land.  The other denials and averments in the answer are substantially the same as in the answer of Hamilton.  Replications were filed to these answers. A number of witnesses were examined and many objections were made to questions propounded to the witnesses.  At the hearing the solicitors for Gamble moved the court to " suppress and exclude the testimony of Howse and of Hamilton, where exception thereto was taken and noted by the special master." This was granted.  They also moved the court to "exclude all other testimony wherein exception is taken and noted by them and noted on the record, as therein appears," and that the court sustain each and every exception and note its ruling on the margin of each exception taken.  This was refused.  There was a final hearing upon the pleadings and evidence taken, and a decree rendered dismissing the cross-bill, granting the prayer of the original bill, and decreeing the tax deed to Branch, dated December 16th, 1875, void and of no effect.  The executor, Gamble, appealed and assigns for error the overruling the first, second, third and

fourth grounds of demurrer to the original bill; the sustaining the demurrer to the cross-bill; the failure of the court to "sustain each and every exception of appellant to the testimony as taken and noted by the examiner"; dismissing the cross-bill; granting the prayer of the original bill and decreeing the tax deed void.

It is conceded by all parties that Howse had title to the land in controversy by patent from the United States executed in 1854, but he does not seem to have come into possession of this patent till 1883. It is also conceded that Branch, the testator of Gamble, purchased the land at a tax sale made in 1874, and in December, 1875, obtained a tax deed. The evidence shows that on November 11th, 1872, Branch paid the taxes for Howse, amounting to $4.10. It appears from a receipt given by the county treasurer, dated January 2d, 1873, that Branch paid him $17.50 to redeem the lands of Howse from a sale made in 1872, for the taxes of 1871. It also appears that in February, 1873, Branch gave one Strange a receipt for $21.60 expressed to be for tax receipts, and Howse testifies that he gave Strange money to pay the taxes and for redemption of the lands, and that Strange brought back and delivered to him the above-mentioned receipt from Branch. The sum mentioned in the receipt from Branch is exactly equal to the amount of the receipts from the county treasurer and the tax collector above-mentioned. In May, 1875, Branch wrote to Howse acknowledging the reception of a letter from him about

the land, informing him that he, Branch, had, before reception of the letter, paid the taxes " and taken the receipt as sold for taxes," and said that he would tell him all about it when he saw him, and that "it was all right." It is proven by two witnesses that in April, 1876, after Branch had obtained the tax deed, a son of Howse went to see him about Howse's land being advertised for sale for taxes, and that Branch told him to tell his father that he should not suffer for his, Branch's, neglect, that he would make it all right; that it would not have occurred if he had not been sick ; and that on the morning this sale was to take place, Branch started to the county seat where the sale was to be made, as he assured Howse's son he would do. The following year, June 28th, 1876, Howse wrote to Branch : "I understand from James Howse" (his son) "that you want to buy my lands adjoining you at Sumterville," the land in controversy, and offering to sell for $500, and give deed when he got title, or to allow the land to be sold for taxes and Branch to purchase and acquire title that way. In 1878 Howse writes to Branch : "I understand that the land I sold you is advertised to be sold for taxes. I think, as my property, you had better look after it.  *  * . It may give you some trouble if not looked after and sale stopped in some way." It does not appear that Branch ever informed Howse that he had obtained a tax deed upon the certificate of purchase, concerning which he had written him in May, 1875, it was all right. In 1880 Howse writes to the widow of Branch : " Mr.

Branch was to pay me for price of land, one hundred and fifty dollars, and only paid me thirty; the balance I claim." The same year he wrote to Hamilton: "Yours of last month has been received. I will relinquish my claim to piece of land for one hundred and twenty dollars." It appears from the testimony of Hamilton that he was writing to Howse for Mrs. Branch about the land in controversy; that he, Hamilton, lived close by and was fully informed of the fact that the executor of Branch claimed the land. Mrs. Branch had the control and management of the property of the estate for the executor. Hamilton purchased the land from Howse in 1883, and in his testimony he admits that he knew, at the time he purchased, that there was a tenant in the cabin on the land, and that he did not inquire of her under whom she held, or by what right she held possession. It also appears from the evidence that the greater portion of the land was unenclosed and uncleared; that since 1875, or early in 1876, Branch and those in privity with him have been using the land, which adjoined his farm, for getting rails and wood, and that the log cabin on the land had been occupied at different times by persons holding under him. The woman whom Hamilton testifies was in possession when he purchased, testifies that she rented from Mrs. Branch and entered by her permission; that afterwards Hamilton told her he had purchased, and that she must pay rent to him; that she did pay him rent for several months,

but being informed by the executor of Branch that Hamilton did not own the land and that she should pay to Mrs. Branch, she had since then paid rent to Mrs. Branch. Hamilton does not contradict her. The evidence shows that the executor of Branch was in possession of at least a portion of the land when the bill was filed. Leaving out the testimony of Howse as to transactions and conversations with Branch, which was correctly excluded by the chancellor, and there is sufficient testimony to establish the allegation that Branch was the agent of Howse for the payment of the taxes on the land, and to show fraudulent conduct, concealment and deception on the part of Branch, and to render the tax deed to Branch void. Hamilton was a purchaser with actual notice, and whatever right or title he acquired by the purchase from Howse, was subject to all the equities and rights of the executor of Branch. The title claimed by Hamilton is legal in its character, and his remedy, if he has any, is at law, and he can not successfully invoke the equitable jurisdiction for the removal of a cloud from his title. Haworth vs. Norris, 28 Fla., 763, 10 South. Rep., 18; Sloan vs. Sloan, 25 Fla., 53, 5 South. Rep., 603.

The chancellor erred in granting the prayer of the bill, and in decreeing that the tax deed be declared null and void. About three years after Hamilton had endeavored to assist Mrs. Branch in effecting a settlement with Howse, he purchased, with his own funds, the land from Howse. Being a purchaser with actual

notice, he thereby acquired the title of Howse, subject to all the rights and equities of the executor of Branch.

The cross-bill commences with an averment that Branch had "purchased the land from Howse, and that Howse had put him in possession, which possession he held till his death, and that his executor held since his death," and admits that all the purchase money had not been paid. Under this state of facts the possession of Branch and his executor was not adverse to the title of Howse, but in subordination thereto. Hart vs. Bostwick, 14 Fla., 162; Levy vs. Cox, 22 Fla., 547; Coogler vs. Rogers, 25 Fla., 546, 7 South. Rep., 391. When the executor refused to carry out the contract and complete the purchase, he was bound to yield possession to the vendor, and if he did not, the vendor could maintain ejectment. Knox vs. Spratt, 19 Fla., 817. A party may convey land held in actual possession by another, provided that such actual possession is not adverse. Levy vs. Cox, *supra*. There was no error in denying the prayer of, and dismissing the cross-bill. It is unnecessary to consider the other errors assigned.

The decree of the Circuit Court dismissing the cross-bill is affirmed. The decree of the Circuit Court granting the prayer of the original bill is reversed, and the cause remanded with instructions to dismiss the original bill, the complainants having an adequate remedy

at law, and tax the complainants therein with all the costs incurred in and about the said bill, and taxing the defendant with all costs occasioned by his cross-bill. It is ordered that the appellees be taxed with the costs of this appeal.