## Creech, et al. v. Creech, et al.

(Decided December 5, 1919.)

## Appeal from Harlan Circuit Court.

1. Adverse Possession—Continuity of Possession—Separate Periods of Possession.—Where a mother and her children who were in possession of land, moved away, leaving in possession a son-in-law, who was evicted, and the property was in possession of another for a year or more, and then one of the children returned and took possession of the property, his possession from that time could not be added to the original possession in order to make up the statutory period.

2. Adverse Possession—Hostile Character—Possession Under Executory Contract of Sale.—A vendee's possession of land under an executory contract of sale, whether oral or written, is not adverse to that of his vendor until he has performed the conditions thereof or repudiated the latter's title.

3. Adverse Possession—Hostile Character—Possession Under Executory Contract of Sale—Sufficiency of Evidence.—Where in an action for a partition, defendants asserted title by adverse possession under an oral contract of sale, but failed to show that they had had possession for fifteen years after the purchase money was paid, or after their repudiation of the vendor's title, the evidence was not sufficient to show an adverse holding for the statutory period.

G. A. EVERSOLE for appellants.

H. M. BROCK and J. F. BOWLING for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

W. M. Creech and others, children of Isaiah Creech, deceased, brought this suit against Ballard Creech and others, children of Gilbert Creech, a deceased son of Isaiah Creech, for the partition of a small tract of land in Harlan county which, it is claimed, was owned by Isaiah Creech and descended to plaintiffs and defendants upon his death. The defendants denied the title of plaintiffs and pleaded exclusive title thereto by adverse possession. On final hearing the defendants were adjudged to be the owners of the land, and plaintiffs appeal.

The land in controversy consists of two small tracts known as the "Jim Garden" and the "Jack Field." Gilbert Creech, the father of defendants, built a house on

the "Jim Garden" and remained there until his death which occurred in 1895. After that his widow and children continued to occupy the home until the year 1906 when they moved to Virginia. S. B. Day and his wife, a daughter of Gilbert Creech, remained in possession of the home. On December 20, 1906, Isaiah Creech brought a suit of forcible entry in a justice's court and evicted Day. Thereupon. Isaiah Creech rented the house and lot to Dr. Wright, who remained there about a year. After that time Ballard Creech, who had been married, returned to the house. In the years 1910 and 1911, Isaiah Creech sold to W. M. Creech and Polly Ison a part of the "Jim Garden," and they each built a house thereon within a short distance of the house occupied by Ballard Creech. The tract in question was a part of the home farm of Isaiah Creech and he paid taxes thereon up until his death which occurred in the year 1912.

For defendants, Ballard Creech testified that the defendants had lived on the land for twenty-five years and had always claimed it. They put out an orchard, built a barn, cultivated a portion of the land and cleared a little of it, and occupied and controlled it in every respect. During all that time his grandfather had never demanded any rent. The land was cleared and improved. When he returned to the place Dr. Wright was in the house, but he stayed there only a short time. He believed that was in 1910. He never entered any objection to the erection of the houses by Polly Ison and W. M. Creech. On redirect examination he stated that when Bill Creech started to buy he told him that they claimed that that was their possession. Bill said, "You have got no possession. That was tried in High Lewis' court." He further stated that the "Jim Garden" and "Jack Field" were in separate enclosures. He only remembered of their cultivating two corn crops in the "Jack Field." This took place in the years 1902, 1903 or 1904. Since that time the "Jack Field" had not been used for anything except for pasture. W. W. Cornett testified that it had been twenty, probably twenty-two or twenty-three years since Gilbert Creech moved on the land and built his house. At that time Gilbert Creech claimed the land. Lewis Creech testified that it had been twenty-five or thirty years since Gilbert Creech built the house and moved on the land, and that Gilbert claimed

the land. The "Jack Field" was separated from the "Jim Garden" by the Still House branch and a lane. Alex Creech, a son of Isaiah Creech, testified that Gilbert Creech built the house on the land about twenty-seven years ago, and from that time on he commenced to claim the land. Gilbert got the land from his father, Isaiah. His father had told Gilbert that if he would help him pay the debt he owed, "he aimed to let him have the land." He saw Gilbert pay his father $200.00 on the land at one time and $50.00 at another. Gilbert Creech and his widow lived on the land about seventeen years before she moved to Virginia. The tract of land in controversy was the only land that Isaiah Creech had not disposed of by deed. At the time Gilbert Creech was buried, his father said that he was sorry he had not made a deed to Gilbert. On cross-examination he stated that Gilbert and his children had never cultivated the "Jack Field." All the time Gilbert Creech was looking to his father for a deed. E. Z. Vanover testified that Gilbert Creech bought the land from his father. The old man said he had sold it to him. He told the old man of hearing Gilbert say that his father would make him a deed, and the old man said he was ready and willing to make it at any time. In his opinion it had been twenty-seven or twenty-eight years since Gilbert Creech moved on the land. He had never heard any trade made between Isaiah Creech and Gilbert Creech. H. B. Davis testified that Gilbert Creech had moved on the land twenty-six or twenty-seven years ago. When he moved on the land Gilbert Creech claimed it. Isaiah Creech told Gilbert about owing Judge Hall a note and said if he would pay the note off he would deed him the land. Gilbert said he would do that. He did not know whether he had ever done it or not.

J. K. Creech, one of plaintiffs, testified that both Gilbert Creech and his father told him that the father had not sold Gilbert the land. His father so swore on the trial of the forcible entry case. The money that Gilbert paid over to his father was money owed his father on the sale of timber. Gilbert Creech never claimed the land. After Steve Day was put out, Dr. Wright occupied the house, then Ballard Creech moved in. He got Elisha Creech to go to his father and ask him to let Ballard occupy the house. Ballard said he

would give up possession at any time. It was six or seven years from the time Gilbert Creech moved on the land until his death. After Gilbert moved in, his father cultivated the ''Jack Field'' two or three times in corn, and pastured it whenever he desired. There was an apple orchard on the ''Jim Garden'' tract, from which his father gathered fruit whenever he desired. W. M. Creech testified that he was with his father, Isaiah Creech, and Gilbert Creech every few days, and never heard of any trade by which his father sold the land to Gilbert. He had heard Gilbert say that he knew that his father never aimed him any land there. He and his father and Gilbert hauled the timber to make Gilbert's house. His father arranged for the timber from which the lumber was sawed. Gilbert Creech occupied the house from six to eight years before his death. When Ballard returned from Virginia he told his grandfather that he would pay him as much rent as anybody. He also said that he would fence the land and his grandfather helped to fence it. The reason that Gilbert Creech moved on the land was that he had had trouble with his mother-in-law, who wanted to get him waylaid and killed, and his father wanted him on the home place, thinking it was safer there. Gilbert never paid his father anything for the farm. The money he gave his father was proceeds of a debt for lumber which he had collected. His father did owe W. F. Hall a note, but he borrowed the money from R. N. Cornett and paid the note off. H. C. Lewis testified that he was a justice of the peace in 1906, and that he rendered a judgment evicting Stephen Day from the land in the suit of forcible entry brought by Isaiah Creech. For a while he was deputy sheriff and Gilbert Creech never paid any taxes on the land. They were paid by Isaiah Creech. Elisha Creech testified that when Ballard Creech returned he stated to his grandfather that he would pay him as much rent as anybody. Isaiah Creech did not want him to have the land, but witness asked him to let Ballard come back to the place. Then Isaiah Creech let Ballard move in. Isaiah Creech never charged Ballard any rent. E. C. Davis testified that he had been engaged in the logging business and that Gilbert Creech was his first partner. Gilbert Creech lived on Pounding Mill branch for a part of the year 1892. In the spring of 1892 he moved to the

"Jim Garden." In the year 1894 he, Gilbert, Sam Estepp and Alex Creech bought timber of William Ison, and he procured the consent of Isaiah Creech to haul through the "Jack Field." The $250.00 which Gilbert Crech paid to his father was money due his father for timber sold. The reason Gilbert Creech moved to the "Jim Garden," he said, was that his father was afraid that he would be killed. After Gilbert moved on the place, Isaiah Creech "tended" the "Jack Field" in the year 1894. In 1900, Isaiah Creech put a fence around the "Jack Field." Isaiah Creech, Jr., testified that Gilbert Creech built a house and moved on the land about twenty-seven or twenty-eight years ago. At that time Gilbert Creech claimed the land. At the time Gilbert Creech died, Isaiah Creech said that he was glad that he had not made Gilbert a deed, because if he had the widow would have shared, but now he could just make a deed to Gilbert's heirs, and then they would get it. Isaiah Creech often pointed out "Jim Garden" and "Jack Field" as the boundary of land which he intended for Gilbert. Annie Creech testified that Gilbert Creech was living on the land when she was married, and that occurred twenty-seven or twenty-eight years ago. H. C. Lewis testified that he remembered Gilbert's living on the land as far back as 1891.

The continuity of the defendants' possession was broken by the eviction of Day and wife on December 20, 1906. It was a year, and probably three years, from that time before Ballard Creech again located on the land. Under these circumstances, his possession cannot be added to the possession prior to December 20, 1906, to make up the statutory period. This is conceded by appellees, but the contention is made that the evidence was sufficient to show title by adverse possession prior to December 20, 1906. The evidence as to the precise time when Gilbert Creech, the father of defendants, entered upon the land leaves the question in doubt, but if it be conceded that he entered more than fifteen years prior to the eviction of his son-in-law, that fact is by no means conclusive that his and his children's holding was adverse under the facts of this case. The possession of the vendee under an executory contract of sale is not adverse to that of his vendor until he has performed the conditions thereof or repudiated the latter's title, and

this is true whether the contract be in writing or in parol. 2 C. J. p. 153, sec. 270; 1 R. C. L., sec. 73, p. 750; Padgett v. Decker, 145 Ky. 227, 140 S. W. 152; Gossom v. Donaldson, 18 B. Mon. 230, 68 Am. Dec. 723. Hence, if any portion of the purchase money remains unpaid, the holding of the vendee is not adverse unless he repudiates his vendor's title. 1 R. C. L., sec. 74, p. 751; Gamble v. Hamilton, 31 Fla. 401, 12 S. W. 229. It is the contention of appellees that their father bought the land under a parol contract. One of the witnesses testified that Isaiah Creech told Gilbert Creech that if he would help him pay off the debt he owed, he aimed to let him have the land, and that he saw Gilbert pay his father $200.00 at one time and $50.00 at another. Another witness testified that Isaiah Creech told Gilbert about owing Judge Hall a note, and said that if he would pay the note off, he would deed him the land, but whether this had ever been done, he did not know. Even if it be conceded that this evidence was sufficiently satisfactory to show a contract of purchase in view of the evidence to the contrary, yet neither witness testified when the conversation took place, nor did the one who saw Gilbert pay his father $200.00 at one time and $50.00 at another say when either payment was made. Manifestly, Gilbert's holding was not adverse until he complied with the contract and made such payments on the Hall debt as he agreed to make. For aught that appears in the record, these payments, if made at all on the land in question, may have been made after the year 1892. If so, Gilbert Creech's holding did not become adverse until that time, there being no evidence to the effect that prior to that time he actually repudiated his father's title. That being true, there was no adverse holding for fifteen years as required by the statute. Aside from these considerations, it seems to us that the acts of the parties support the view that there was never any sale of the land in controversy to Gilbert Creech. When the widow and heirs left the property in 1906, and their representative, Stephen Day, was evicted by Isaiah Creech, there was no attempt then to assert any title to the property. During all the time that it was claimed that Gilbert Creech and his children owned the property, Isaiah Creech paid the taxes thereon. The weight of the evidence is to the effect that when Ballard Creech returned,

he did so with the understanding that he was to assist his grandfather in fixing the fencing. Not only so, but Ballard Creech and the other defendants knew that their grandfather was selling off portions of the land in controversy, and saw the vendees build houses adjoining that occupied by Ballard Creech. Notwithstanding these well known acts of ownership on the part of their grandfather, they did not sue their grandfather, but waited until after his death before bringing an action for that purpose. Looking at the case from every angle we are constrained to the opinion that the defendants failed to show title by adverse possession, and that the court erred in adjudging that they were the sole owners of the land.

Judgment reversed and cause remanded for proceedings consistent with this opinion.