## Elk Horn Coal Corporation v. Jacks Creek Coal Company et al.

(Decided October 27, 1931.)

J. W. HOWARD, W. P. MAYO, E. C. O'REAR and ALLEN PREWITT for appellant.

B. F. COMBS, A. B. COMBS, GEO. B. MARTIN and H. H. SMITH for appellee.

OPINION OF THE COURT BY HOBSON, COMMISSIONER—Affirming in part and reversing in part.

The Jacks Creek Coal Company brought this action against the Elk Horn Coal Corporation, W. F. Hite, and Justus Collins, alleging that it owned all the coal and

minerals in the tract of land described in the petition, under a lease made by Hite and Collins to it; that the Elk Horn Coal Corporation was claiming to own the land, and was threatening to remove the minerals. It prayed that its title be quieted and for all proper relief. The Elk Horn Coal Corporation filed an answer in which it denied the title of the Jacks Creek Coal Company and set up title in itself to so much land as it claimed and prayed that its title be quieted. It made its answer a cross-petition against Hite and Collins, and prayed judgment also against them. Hite and Collins filed an answer and counterclaim against the Elk Horn Corporation. The controversy involves the title of five parcels of land: (1) The Nancy Hall 50-acre patent; (2) the William Mullins 100-acre survey; (3) 30 acres of adjacent unpatented land; (4) a tract of 5.30 acres; (5) one-fifth of a tract known as the David J. Mullins home farm.

The circuit court gave judgment in favor of the Jacks Creek Coal Company and Hite and Collins as to all five tracts. The Elk Horn Coal Corporation appeals.

The controversy as to each parcel will be stated and disposed of separately.

■ *The Nancy Hall 50-acre Patent.* The patent was issued to Nancy Hall in 1855. The survey was about 600 feet wide, and extended up Dog Branch beginning about 600 feet from the mouth of the branch. Nancy Hall erected a house and other improvements on the survey, and cleared and inclosed a portion thereof. She sold the land to Lewis Hall, who lived upon it, but who had no deed or written contract, so far as shown by the record. Lewis Hall sold the land to Wm. Adams, and Nancy Hall made conveyance of the boundary to Wm. Adams in 1877. Two years later Wm. Adams sold and conveyed the land to W. R. Hall, Jr., who moved into the house thereon, extended the clearings, and built more fences. He testified that he claimed to own all the land upon Dog Branch, but his deed called for only 50 acres and followed the patent calls. In 1893 W. R. Hall, Jr., sold the land to David J. Mullins and made a conveyance to him. Mullins immediately moved upon the land, and lived there until he died. By his will he devised it to his wife and infant children, who maintained the possession. Three or four years after David J. Mullins moved upon the Nancy Hall patent, he directed his son, William Mullins, to clear some land in the head of the creek outside of the boundaries of the Nancy Hall patent, although

a part of the clearing made by William Mullins overlapped a small part of the Nancy Hall patent at the corner.

It is argued that the deed from W. R. Hall, Jr., to David J. Mullins made in 1893 was void for uncertainty of description. The land was described in that deed as follows:

> "A certain tract or parcel of land lying and being in the County of Floyd and State of Kentucky, and said land is lying on Jacks Creek on Left Beaver Creek, to-wit:
>
> "Beginning on a beach stump running the side of the ridge; thence running around with said survey as said patent calls for back to the beginning."

Whether the description was technically sufficient to identify the land conveyed, we deem it unnecessary to determine, for all uncertainty was removed by the possession taken by David J. Mullins, which furnished notice of his title and claim, and constituted an adverse holding of the patented boundary not only to Hall, but to all the world. Whittaker v. Farmers' National Bank, 237 Ky. 596, 36 S. W. (2d) 18; Chrisman v. Greer, 239 Ky. 373, 39 S. W. (2d) 676; Overstreet v. Rice 4 Bush 1, 96 Am. Dec. 279; Shive v. Janes, 168 Ky. 575, 182 S. W. 602; East Tenn. Tel. Co. v. City of Frankfort, 141 Ky. 590, 133 S. W. 564.

This court in Russell v. Tipton, 193 Ky. 310, 235 S. W. 763, 765, said:

> "But it is insisted that the description in the title bond is too vague and indefinite. Whether the description would be regarded as sufficient if the contract had remained executory, it is unnecessary to decide. Here the contract was executed by the vendee's taking possession under the contract and holding the land with the acquiescence of the vendor.

That being true, the subject-matter of the contract was made certain by the acts of the parties, and the contract is not void because the description was not sufficient. Overstreet v. Rice, 4 Bush 1, 96 Am. Dec. 279; Ferguson v. Cabell, 141 Ky. 499, 133 S. W. 539."

The devisees of David J. Mullins were in possession of the Nancy Hall patent when the vendor, W. R. Hall, Jr., made the deed of May 26, 1903, upon which the appellant relies, and, in so far as that deed purported

to cover any part of the Nancy Hall patent, it was void because of the fact that the Mullins devisees were at the time the owners of the Nancy Hall 50 acres and in adverse possession thereof. · Kentucky Statutes, sec. 210; Tennis Coal Co. v. Hensley, 198 Ky. 616, 250 S. W. 509; War Fork Land Co. v. Carr, 236 Ky. 453, 33 S. W. (2d) 308; Pioneer Coal Co. v. Asher, 226 Ky. 488, 11 S. W. (2d) 116; Begley v. Erasmie, 205 Ky. 240, 265 S. W. 833. Hence the circuit court ruled correctly in adjudging the Nancy Hall 50-acre patent to the appellees.

■ *The 100-Acre Survey of William Mullins, Patented to W. R. Hall, Jr.* In 1897 William Mullins, the son of David J. Mullins, with the consent of his father, or by his direction, went to the head of Dog Branch and outside of the Nancy Hall patent where he made a clearing, built himself a house, dug a well, and set out some apple trees. The clearing covered a small corner of the Nancy Hall patent. While he was living there in 1898, his father died. By his will David J. Mullins devised his home place to his wife and infant children. Prior to 1901 William Mullins had a survey made of 100 acres of land, including his house and clearing at the head of Dog Branch. After the survey was made, he assigned it to W. R. Hall, Jr., and Hall received the patent. It lapped to a considerable extent on the Nancy Hall patent. Mullins some years later moved from the house where he was then living down to the lower end of the 100-acre patent, and lived there for some years. In this condition of things, on May 26, 1903, W. R. Hall, Jr., who owned a large body of other land near the head of Dog Branch, conveyed with general warranty to the Northern Coal & Coke Company the minerals under all his land at the price of $3.50 an acre, the total consideration being $4,323.20. He included in the deed all the land on Dog Branch. The Elk Horn Coal Corporation is a subvendee under the Northern Coal & Coke Company. This deed included in the description the 100-acre survey made in the name of William Mullins, which was afterwards patented in the name of W. R. Hall, Jr., and all other land on Dog Branch. On July 21, 1909, William Mullins, in consideration of $250, made a deed to Hall for the 100 acres covered by his survey and, in 1907 his mother and brothers and sisters executed to W. R. Hall, Jr., a deed for all the land lying on Dog Branch. In 1916 Hall sold this land to W. F. Hite. Hite sold half of it to Collins, and the two later leased it to the Jacks Creek Coal Company.

The question for determination is the validity of the Wm. Mullins 100-acre patent and of the deed made by W. R. Hall, Jr., on May 26, 1903, to the Northern Coal & Coke Company, in so far as that 100 acres is concerned.

The appellees insist that the patent was void as a whole because William Mullins was a tenant of David J. Mullins, and could not attorn to a stranger or take out a patent for any of the land claimed by David J. Mullins or his devisees. Kentucky Statutes, sec. 2296; Hardwick v. Karn, 111 S. W. 293, 33 Ky. Law Rep. 776; Holton v. Jackson, 184 Ky. 559, 212 S. W. 587; William v. Thompson, 80 Ky. 325; Moore v. Brandenburg, 234 Ky. 400, 28 S. W. (2d) 477; King v. Hill, 108 S. W. 238, 32 Ky. Law Rep. 1192; Trabue v. Ramage, 80 Ky. 323.

They also insist that the patent issued to W. R. Hall on the Wm. Mullins survey was a mere security for debt, and, since the adverse possession of William Mullins and the devisee of David J. Mullins continued beyond the date of the deed made by Hall in 1903, the deed was void under the champerty statute to the extent it covered land in adverse possession, and, when Hall subsequently acquired title to the land, it did not inure to his grantee in the void deed. Altemus v. Nickell, 115 Ky. 506, 74 S. W. 221, 24 Ky. Law Rep. 2,401, 103 Am. St. Rep. 333; Colson v. Johnson, 208 Ky. 684, 271 S. W. 1033; War Fork Land Co. v. Carr, 236 Ky. 454, 33 S. W. (2d) 308.

Obviously, the patent issued to Hall on the Wm. Mullins survey was void in so far as it lapped on the prior patent to Nancy Hall. The older patent prevails, and the patented land was in the adverse possession of the devisees of David J. Mullins when the 100-acre patent was issued. Crider v. Crum, 233 Ky. 414, 25 S. W. (2d) 1009.

It may be that the devisees of David J. Mullins could have held the lands outside of the Nancy Hall patent in so far as Wm. Mullins acquired title thereto by patent or adverse possession, but they took no action to that end. Wm. Mullins took out the 100-acre patent in the name of Hall in 1902, and in 1907 the devisees of David J. Mullins sold out to Hall, the vendee of Wm. Mullins. The effect was to ratify what Wm. Mullins had done and to relinquish such rights as they might have asserted against him. The possession by William Mullins of the land covered by the 100-acre patent was not adverse to W. R. Hall, Jr., even if the patent was originally issued to him as a mere security. The title was derived direct from

the commonwealth by Hall, and, until Mullins made a different deal with Hall, he was necessarily looking to him for title. No legal title to the land was ever vested in Mullins. The relation between Wm. Mullins and W. R. Hall, Jr., was not like that created by a deed designed to operate as a mortgage. Snadon v. Salmon, 135 Ky. 47, 121 S. W. 970; Jennings v. Salmon, 98 S. W. 1026, 30 Ky. Law Rep. 168. In such case the title remains in the grantor. Here the title was in the commonwealth until the patent was issued, and then it was in W. R. Hall, Jr., even though Mullins had a right thereto as against Hall, when he complied with his contract with Hall. But, so long as Mullins was looking to Hall for title, as he was doing, he was not holding adversely to him. It more nearly resembles a holding under a bond for title, which is amicable so long as the purchaser looks to the vendor for a deed. Blair v. Meade, 192 Ky. 720, 234 S. W. 433. Until Wm. Mullins repaid the debt due Hall and became entitled under his contract to a conveyance of the land, his holding was amicable to Hall. Butts v. Skinner, 202 Ky. 356, 259 S. W. 708; Collins v. Brown, 209 Ky. 77, 272 S. W. 44. Hence, when Hall settled with Mullins and the absolute title of Hall to the 100-acre survey was confirmed it inured to Hall's grantee under the deed of May 26, 1903. The champerty statute did not apply in such situation for the benefit of Hall. It applies for the protection of those in the adverse possession of land. Mayes v. Kenton, 64 S. W. 728, 23 Ky. Law Rep. 1052; Le Moyne v. Neal, 158 Ky. 316, 164 S. W. 964; Interstate investment Co. v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468; Philips v. Hopkins, 208 Ky. 769, 271 S. W. 1075. It is clear that there was no such adverse possession by William Mullins as against Hall as to invalidate the deed of Hall. The fact that the grantee in Hall's 1903 deed had or was chargeable with notice of the facts recited becomes immaterial in this view of the situation and relation of the parties.

For reasons indicated, we are convinced that the appellant was entitled to the William Mullins 100-acre survey, except to the extent it lapped on the Nancy Hall 50-acre patent. The extent of the lap should be excluded from the 100-acre survey, and the remainder adjudged to the appellant.

■ *The 30 Acres of Unpatented Land.* The 30 acres in dispute is not within the 100-acre survey, or in any survey apparent in the record. There was no actual pos-

session of it. Both parties claim under W. R. Hall, Jr. Appellees alleged that they were the owners of the land, and prayed that their title be quieted. Their title being denied, they showed title under W. R. Hall, Jr., who made conveyance covering it. Appellants alleged that they owned the land, and prayed that their title be quieted. Their title being denied, they showed title under W. R. Hall, Jr. As both parties claim under Hall, it was un-necessary for either to show title beyond the common grantor. Gay v. Moffitt, 2 Bibb 506, 5 Am. Dec. 633; Luen v. Wilson, 85 Ky. 503, 3 S. W. 911, 9 Ky. Law Rep. 83; Stoffler v. Edgewater Coal Co., 198 Ky. 523, 249 S. W. 753.

Appellant's deed from Hall being made first, its title to the minerals is superior to that acquired under Hall's subsequent deed, unless the first deed was invalid.

It is said the first deed of Hall was invalid because the land on Dog Branch, including the 30 acres of unpat-ented land, was in the adverse possession of the devisees of David J. Mullins, who claimed all the land on the branch. The mere claim to all the land on the branch, under the circumstances shown here, did not constitute such adverse possession as to invalidate the deed.

The David J. Mullins possession was confined to the patent boundary, and outside of that he had no clearings or fences, or marked boundaries, except that made for him by Wm. Mullins, and it was all included in the 100-acre survey of Wm. Mullins. Adverse possession must be manifested by some act or fact sufficient to constitute notice of the nature and extent of the claim. Interstate Investment Co. v. Bailey, 93 S. W. 578, 29 Ky. Law Rep. 468; Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629; Sackett v. Miniard, 219 Ky. 765, 294 S. W. 487; Farmer v. R. C. Tway Coal Co., 204 Ky. 356, 264 S. W. 743; Nelson v. Johnson, 189 Ky. 815, 226 S. W. 94; Layne v. Norman, 188 Ky. 317, 221 S. W. 869; Va. T. C. & C. Co. v. Combs, 186 Ky. 261, 216 S. W. 846.

It follows that the appellant had the superior right to such interest as W. R. Hall, Jr., had in the unpatented land, since it held the first conveyance from him, and the lower court erred in adjudging the 30 acres to the appel-lees.

■ *The 5.30-Acre Tract.* W. R. Hall, Jr., while living on the Nancy Hall survey, cleared and inclosed 5.30 acres beyond the south line of that patent near the house where Nancy Hall and he lived. This land he held in adverse possession while he held the land and turned over to David J. Mullins when he sold out to him. The fences had been kept up, and the possession has been unbroken. It is not necessary that a man live on land to maintain possession. David J. Mullins lived on the lower place which adjoined this tract, and maintained physical control of it at all times. Since his death, the possession has been kept up by his devisees and their vendees. The land is not within any other survey, or patent. The circuit court properly gave judgment in favor of appellees for this tract on the ground of fifteen years' actual adverse possession of it by David J. Mullins and those claiming under him.

■ *As to the One-Fifth of the Mineral in the Tract known as the D. J. Mullins Land.* By his will, written November 11, 1897, D. J. Mullins, after devising certain property to his adult children, provided:

> "I farther bequeath my home farm to my wife and infant heirs, to-wit: Ruth Mullins. Cassy Bell and Grover Cleveland, M. Scott and Bertah Mullins, to be equally divided among said infant heirs at the end of five years from this date; and I further bequeath to my wife and infant heirs all the property I own after my just debts are paid."
> In a codicil to his will he said this:
> "I, D. J. Mullins, bequeath my wife the right to control all the land on Honey Camp for five years, and to rent and dispose of the rents for the purpose of maintaining the infant heirs; and at the end of five years, the heirs, to-wit: William Mullins, John Mullins, Harry Lee Mullins and Rebecca Mullins may take possession of said land as named in the will. I further bequeath to my wife and infant children a note I hold against John Little for the sum of fifty dollars, also one against Sam Cook for Twelve Dollars."

By other provisions of his will he made devises to each of his four adult children.

There were five infant children. but there was no child named Ruth Mullins. A daughter named Rhoda

had died some years before. One witness speaks of this daughter as Ruth, but the testimony of her brother is that her name was Rhoda, and that there was no daughter named Ruth. Among the five infant children then living at home was Thomas Butler Mullins, a boy about twelve years of age. On November 7, 1905, Thomas Butler Mullins and wife conveyed to the Northern Coal & Coke Company, under whom appellant claims, his undivided one-fifth in the minerals in the above tract. On October 18, 1907, Thomas Butler Mullins and wife conveyed to W. R. Hall, Jr., their interest in the tract. Elviry England conveyed her interest to Hall on March 31, 1910. Penn Scott Mullins conveyed his interest to Hall on April 30, 1912. The other undivided one-fifth interest was conveyed to Hall by the commissioner February 25, 1914. It is earnestly insisted that Thomas Butler Mullins took no interest in the land under his father's will, as he is not named in it. The plain purpose of the will, read in the light of the codicil, was to make a provision for the infant children residing with their mother. Indeed, the testator was providing for all of his children. Thomas Butler, admittedly, was one of the infant children, and he was the oldest of them. They are named in the will in the order of their ages, and the first name is Ruth Mullins. If there was one named Ruth, she was dead when the will was written. No reason is disclosed for disinheriting the infant son. It is the view of the majority of the court that the testator meant to include his son, Thomas Butler, in this provision of his will, and that the word "Ruth" in the will must be the result of a mistake of some kind. As Thomas conveyed away his one-fifth interest in the mineral before he made the deed to Hall in 1907, Hall by that deed took only the estate that Thomas then had. Hall, by taking this deed, recognized that Thomas was one of the infants provided for by the will; for the deed recites the will as the source of Thomas' title, and some of the others of the family joined in this deed subject to the rights of the Northern Coal & Coke Company under its prior deed from Thomas. By section 2341, Kentucky Statutes, any interest in or claim to real estate may be disposed of by deed or will in writing. The minerals were part of the land, and under the statute Thomas had a right to convey any interest he had in the land. Of course, the purchaser simply stands in Thomas' shoes, and he is entitled to no right as against the owners of the other four-fifths interest that Thomas did not

have. But it is entitled to every right that Thomas had in the minerals. The court should therefore have entered judgment in favor of appellants for the property conveyed to it by Thomas Butler Mullins.

It follows that the judgment of the chancellor was correct as to the Nancy Hall 50-acre patent tract and the 5.30-acre tract, and his judgment as to those two parcels of land will be affirmed. But as to the 100-acre survey of Wm. Mullins, in so far as it lay outside the Nancy Hall patent, there should be a decree for the appellant. The appellant also is entitled to the interest acquired from Thomas Butler Mullins, and to the 30 acres of unpatented land conveyed to it by W. R. Hall, Jr.

The judgment is affirmed in part and reversed in part for a judgment in accordance with this opinion.

Whole court sitting.