## Deaton v. Morris et al.

December 10, 1948.

Wooton & Ward and Grannis Bach for appellant.

Barney W. Baker for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

On or about the first day of March, 1943, the Na-

tional Bank of Lima, Ohio, trustee, through its agent, Floyd Gross, entered into a written contract with appellee, Willie Morris, wherein the Bank agreed to convey to Morris the surface of a tract of land containing approximately 214 acres located on Squabble Creek in Perry County, at the purchase price of $800. By the terms of the contract Morris paid $25 down and agreed to pay the balance of $775 within 4 months from the date of the contract and upon delivery of the deed to the property. By permission of the agent, Gross, appellee took possession of the land.

On September 3, 1943, the deed was prepared in conformity with the terms of the contract. It was placed in the hands of the agent, Gross, to be delivered upon the payment of the balance of the purchase price. Gross testified that he wrote Morris on several occasions requesting that Morris meet him at Hazard to pay the balance on the purchase price and receive the deed. He stated that he never heard from Morris and that in order to complete the transaction he made a trip to the home of Morris but that Morris was away. He stated that he contacted Elijah Bolin, the father-in-law of Morris, and that Bolin asserted a claim of $500, which he demanded be deducted from the purchase price of the land. It appears that the Lima Bank was acting as trustee for the creditors and stockholders of the Buckhorn Coal and Lumber Company, a defunct concern, and that Bolin was claiming that Gross, a former stockholder and employee of the Buckhorn Company, owed him $500.

In order to see what efforts were made to consummate the transaction it is necessary to encumber this opinion with the substance of a series of letters.

On October 10, 1943, Gross received a letter from appellee wherein appellee stated that Elijah Bolin had a claim of $500 against the property. He stated that Bolin had directed him to collect this amount for him and that he was leaving with Bolin money to pay the remainder and receive the title to the property. He further stated that Bolin would have to be settled with before he could pay the balance and accept the title.

On November 27, 1943, Morris wrote the National Bank of Lima, Trustee, in substance, that he held the title bond for the tract of land and that Bolin had a

claim of $500 against the land and was in possession of part of the boundary. In this letter he asked the National Bank of Lima to settle with Bolin and obtain the papers Bolin held against the land, otherwise he would have to sue for title.

On October 4, 1944, Jouett & Metcalf, attorneys, wrote to Willie Morris, sending one copy to him at Doorway in Perry County, Kentucky, and the other to him at 372 Harriet Street, Dayton, Ohio, both by registered mail. In this letter Morris was reminded that the Bank had offered to deliver the deed to him and that he had refused to accept it and had failed to pay the balance of $775. It was stated in this letter that the Bank was still willing to deliver the deed upon payment of the balance due but inasmuch as more than 4 months had elapsed since the contract was entered into, "this is to notify you that unless the balance of $775 is received within 10 days from the date of this letter, we will assume that you still refuse to pay the balance due and regard the contract as cancelled and proceed accordingly."

On October 25, 1944, Messrs. Jouett & Metcalf received from Elijah Bolin a letter in which he acknowledged receipt of the letter written to Willie Morris on October 4, 1944. Bolin stated that he had been acting as agent for Morris for about a year and that Morris had put money in his hands to pay for the property when a clear title was tendered. He stated that the Bank's agent had told Morris that there was nothing against the land when he bought it but that there were 3 or 4 claims against it. In this letter Bolin said that Morris wanted a clear title but would accept and pay $500 for special warranty deed. Or, he said if the Bank would clear the title to the whole boundary, he would pay the balance of $775. He asked them to address all letters concerning the business to Willie Morris, in care of Elijah Bolin at Doorway, Kentucky.

On May 8, 1946, Kelly Francis, an attorney of Lincoln County, wrote to Jouett & Metcalf, attorneys at Winchester, wherein acknowledgment was made of the letter of October 4, 1944, and in which they were informed that Mr. Bolin, agent for Mr. Morris, had the $775 with which to pay for the deed whenever it was

ready for delivery, and in which he demanded a deed conveying the fee simple title to Willie Morris.

On August 21, 1946, appellant, Walter Deaton, instituted this action against Willie Morris and his father and tenant, Wiley Morris, alleging that he was the owner of, and entitled to, the tract of land which had been conveyed to him by the National Bank of Lima, trustee. He sought an injunction against the defendants to prevent them from cutting any of the timber on the land or from committing other trespasses thereon. He sought and obtained from the Clerk a temporary restraining order.

In their answer defendants denied all allegations of the petition and by further answer alleged that Willie Morris purchased the land under title bond, at which time he was placed in possession of the land, and that his father and agent, Wiley Morris, lived on the land as his agent and tenant. He stated that he has been in the actual, open, and adverse possession of the same from that date until the present time, and that his possession has been adverse to all the world, and especially to the plaintiff, Walter Deaton, and continues to be adverse to him and all others.

It was further alleged that Walter Deaton was claiming to have some interest in the land, which had arisen since the purchase of the property by defendant, Willie Morris. Defendant asked the title be quieted in him as against Walter Deaton.

There is some controversy as to whether or not a reply was filed to the answer of the defendants below, but that matter will be discussed later.

The regular Judge of the Court having disqualified himself, Judge Franklin P. Stivers sat as Special Judge, who, after hearing the matter, held that the deed of conveyance to the appellant was champertous and void, and dismissed the plaintiff's petition. However, the Court further ordered and adjudged that the portion of the defendant's answer pleading and praying the court to quiet his title to the land described in the petition be denied. From that judgment plaintiff below prosecutes this appeal.

Appellant insists that the court erred in its ruling

below and should have adjudged him to be the owner of the land and granted him the relief sought.

Appellees insist that appellant has no standing on this appeal because: (1) Appellant failed to traverse defendant's plea of champerty. (2) The court will not volunteer relief which the party does not suggest he is entitled to, or look outside the averments of the pleading to find relief that may be granted under a general prayer. (3) No deed was ever tendered to the appellee, .and, finally (4) Morris was justified in any delay in making his payment to the Bank.

We direct our attention first to the matter of alleged failure to traverse the plea of champerty. Appellant contends that before the case was tried a general demurrer was filed by plaintiff below to defendant's answer and that without waiving same he filed a reply. It is claimed that these were handed to the Court who placed them in the Clerk's record in the case which the Judge had before him, and that the Judge took the original records, together with these pleadings back to the Clerk's office and left them with the Circuit Clerk, who failed to mark them as having been filed. These, supported by affidavits of attorney for appellant and the Clerk of the Perry Circuit Court, are before us in a supplemental record brought here on motion of appellant.

In appellees' response to appellant's motion to file the supplemental record, particular attention is directed to the affidavit of Judge Stivers, in which he states that he is not able to say whether or not the reply was in the record at the time the case was tried and judgment rendered. It is significant, however, that he does state that the case was heard in the presence of the attorneys for the plaintiff and the defendant and no one at any time called the Court's attention to the fact that there was no reply in the record. We do not deem it necessary to enter into a discussion here of the validity of the reply as a part of the record as was done in the case of Day Congleton Lumber Co. v. Mack, Stadler & Co., 69 S. W. 712, 24 Ky. Law Rep. 640, since it is manifest that the lower court, in disposition of the cause, treated the reply as filed.

It is true that champerty as such was not definitely

pleaded. The statement was merely made that defendant was holding the land adversely. Under such a statement of facts certainly the plea of champerty may be taken advantage of without pleading it specifically. In Petrey v. Adkins, 200 Ky. 463, 255 S. W. 87, we held that champerty may be taken advantage of without pleading it but if it is pleaded it will be taken as true unless traversed. We must call attention, however, that there are certain qualifications to that rule. Since the Petrey opinion above, we have held that in equity cases a party waives failure to traverse affirmative allegations where the case was tried as if the issue had been joined in the pleading.

In Short v. Robinson, 280 Ky. 707, 134 S. W. 2d 594, 596, we said: "We have ruled in actions ex contractu and in suits of equity that a party waives the failure to traverse an affirmative allegation where the case was tried as if the issue had been joined in the pleading, but in tort actions the rule is otherwise."

In Hardin's Committee et al. v. Shelman et al., 245 Ky. 508, 53 S. W. 2d 923, 925, we said:

"These Code provisions may be waived. Louisville & N. R. Co. v. Tuggle's Adm'r, 151 Ky. 409, 152 S. W. 270.

"The parties, their counsel, and the court having so tried and the court so determined the case after such hearing, it is considered by this court that in so doing they treated the answers and counterclaim of the Liberty Bank & Trust Company and of George Gray and Ola A. Hardin as controverted. It is too late to complain here for the first time because no replies were filed. Reading v. Ford's Heirs, 1 Bibb 338; Porter v. Martin, 1 Litt. 158; Newby v. Million, 15 Ky. Law Rep. 63."

As pointed out above, the Judge in his affidavit stated that no one at any time called the Court's attention to the fact that there was no reply in the record. Appellee did not then insist that appellant's petition be dismissed on the ground that his plea of champerty stood uncontroverted, but on the other hand, without calling the Court's attention to an alleged claim that there was no answer filed, took proof and permitted the Court to treat the matter as though one had been filed.

In Carter v. Stennet and Eason, 10 B. Mon. 250, 49 Ky. 250, we said: "But when, as in the present case, it sufficiently appears that the answer, though not formally noted of record, has been filed with the papers in proper time; that this was known to the complainant, and that the Court and the parties have treated it as a part of the case, it has been the practice of this Court to regard it in the same light, and to give it the same effect as if it had been·regularly filed of record."

Therefore, based upon the showing that the reply was placed in the record, though not marked filed, and especially due to the fact that the cause was considered as though the reply was filed, we conclude that appellee has waived the Code provision that every material allegation for the purpose of the action must be taken as true unless especially traversed. Civil Code of Practice, sec. 126.

This leads us then to a consideration as to whether or not the Court was correct in adjudging appellant's deed to have been champertous and void. The ancient rule absolutely prohibiting alienation by one not in possession has been generally discarded. The generally accepted rule now is that a conveyance of land adversely held is champertous only when someone other than the grantor is in possession and is claiming adversely to the grantor. Consequently to avoid a deed, such adverse possession must exist at the time of the deed, and it may be added, without regard to the length of time the adverse possession has existed prior thereto. And, this adverse possession must be of the same nature and character, excepting the period required by the statute of limitations, as the adverse possession which results in title by prescription. Fordson Coal Company v. Mills, 234 Ky. 64, 27 S. W. 2d 382. However, this rule is not absolute. There may be other factors entering into the determination of the question of whether there is such adverse possession as authorizes the application of the champerty statute. Travis v. Bruce, 172 Ky. 390, 189 S. W. 939; Lanham v. Huff, 228 Ky. 139, 14 S. W. 2d 402.

According to the weight of authority, the possession of the vendee holding under an executory contract of purchase is not adverse to his vendor unless or until the

vendee has performed the conditions of his contract, or by his acts or otherwise repudiated his vendor's title.

In 10 Am. Jur., Champerty and Maintenance, Section 20, the rule is stated thus: "The possession of a vendee entering under an executory contract of purchase is not adverse to the vendor so as to avoid his deed to a third person, until the vendee has by performance become entitled to a conveyance or explicit acts by him have informed the vendor that his continuing possession is adverse."

In Creech v. Creech et al., 186 Ky. 149, 216 S. W. 127, 129, we said: "The possession of the vendee under an executory contract of sale is not adverse to that of his vendor until he has performed the conditions thereof or repudiated the latter's title; and this is true, whether the contract be in writing or in parol. 2 C. P. p. 153, sec. 270; 1 R. C. L. sec. 73, p. 750; Padgett v. Decker, 145 Ky. 227, 140 S. W. 152; Gossom v. Donaldson, 18 B. Mon. 230, 68 Am. Dec. 723. Hence, if any portion of the purchase money remains unpaid, the holding of the vendee is not adverse, unless he repudiates his vendor's title. 1 R. C. L., sec. 74, p. 751; Gamble v. Hamilton, 31 Fla. 401, 12 So. 229."

See also Butts et al. v. Skinner et al, 202 Ky. 356, 259 S. W. 708; and Collins v. Brown, 209 Ky. 77, 272 S. W. 44.

In Elk Horn Coal Corporation v. Jacks Creek Coal Co. 240 Ky. 769, 43 S. W. 2d 13, it was held that the possession of a person who has assigned a survey and has a patent issued to the assignee as security, and is looking to the patentee for title, is, until the debt is paid, amicable, rather than adverse to the patentee, and, like one holding under a bond for title, does not invalidate a conveyance from the patentee to a third person.

In the case of Moore v. Baker, 92 Ky. 518, 18 S. W. 363, we held that where a grantee is in possession of land under a deed from an infant, the grantor, after attaining his majority, is not precluded from disaffirming the sale and making a valid conveyance to another grantee.

This leads, then, to a consideration of the question of whether or not appellee had performed the conditions of his title bond, since there is not, nor could there

be, under the facts herein, a claim of repudiation of the vendor's title. From the testimony in this record, and as is evident from the letters above referred to, the vendor made repeated efforts to collect the balance of the purchase price and deliver the deed to Willie Morris. The letters show that Morris insisted that vendor pay his father-in-law, Elijah Bolin, the sum of $500 in satisfaction of some sort of claim Bolin claimed to have against a former employer, or stockholder, of the defunct Buckhorn Coal and Lumber Company.

It is true, and appellee calls attention to the fact, that Judge S. M. Ward had written a letter to the vendor in which he stated that he understood Mr. Morris desired title to the property and was ready to pay the balance of $775, provided for in the contract, when deed was tendered to him conveying title. But, it will be observed from the letters above that long after this letter was written efforts were made to get the transaction closed. It will also be noted that in reply to the final notice, which was given on October 4, 1944, Messrs. Jouett & Metcalf, attorneys, received on October 25, 1944, a reply to that letter wherein it was stated there were claims against the land and that Morris would pay $500 for a special warranty deed, or if the title were cleared a general warranty would be accepted and the balance of $775 would be paid. It was not until a year and one-half after this that the property was deeded to appellant. Appellant's deed was recorded on May 8, 1946, which was more than 2 years after the letter written by Judge Ward. Not until after the transfer had been made and the deed recorded does there appear any disposition on the part of the vendee to meet the conditions of his title bond.

It will be noted that from the beginning Morris apparently had in mind the obtaining of this property at a less price than he had agreed to pay for it. He first demanded that his father-in-law be paid $500. He next asserted that there were adverse claims to the land and asked for a reduction of the balance to $500. The first clear-cut, open, and unconditional offer or statement that he was ready to pay the balance of $775 and accept the deed pursuant to his contract, was after the Bank as trustee had conveyed the land to appellant.

From the above certainly appellee is in no position to say that he had performed the conditions of his executory contract. Consequently, he was not holding adversely and the Court erred in holding the deed to be champertous and void.

Appellant contends that the Court not only erred in adjudging that his deed was champertous and because thereof dismissed his petition, but, on the other hand, should have, under plaintiffs' prayer "for all proper relief," adjudged him to be the owner of the land and should have granted him the injunction as specifically prayed for.

Appellees insist that the Court will not volunteer relief or look outside the averments of the pleading to find and grant relief that may be granted only under a general prayer.

In the first place it will be noted that appellee placed in issue the question of title, and, no doubt, this alone would have authorized the Court to determine that question. However, it could have been done under the prayer "for all proper relief."

In Black Motor Company v. Hensley, 266 Ky. 110, 98 S. W. 2d 281, 282, we said: "The rule is, on an issue joined in equity on the evidence of the parties, the court may grant them any relief the record shows they are entitled to. Smith v. Smith, Ky., 121 S. W. 1002; City of Earlington v. Powell, 226 Ky. 353, 10 S. W. 2d 1060, 1062."

Further in the opinion, in discussing the provisions of Section 90 of the Civil Code of Practice, we said: "* * * Under this Code provision, where the parties following a prayer for specific relief ask for 'all proper relief,' as they have in the present one, it is our duty to view the judgment based on the evidence, and consider the case as though issues sustaining the evidence had been joined by appropriate pleading. Dotson v. People's Bank, 234 Ky. 138, 27 S. W. 2d 673; Farley v. Gibson, 235 Ky. 164, 30 S. W. 2d 876; Young v. Barnett, 258 Ky. 330, 80 S. W. 2d 16; Board of Education of Pulaski County v. Nelson, 261 Ky. 466, 88 S. W. 2d 17."

Under the evidence herein the Court should have

adjudged appellant to be the owner of the land and perpetuated the injunction.

It is obvious from the evidence herein that the claims on the part of appellee that no deed was ever tendered, and that Morris was justified in any delay in making his payment, are entirely without merit.

Wherefore, the judgment is reversed for the entry of judgment consistent herewith.